# WHEELING.

### HERZOG v. WEILER.

Submitted January 26, 1884—Decided April 26, 1884.

An insolvent husband transfers to his wife's brother by deed for an alleged valuable consideration all his personal property; soon thereafter the said brother transfers the said property in like manner to another brother, and the latter immediately transfers it to his sister, the wife of said insolvent husband, as a gift in consideration of fraternal affection. In a controversy between the wife and the creditors of the husband as to the right to have said property subjected to the payment of debts contracted by the husband before the transfer by him. HELD:

I. The burden of proving that the transfer by the husband to the brother was *bona fide* and for a valuable consideration rests upon the wife and not upon the creditors.

II. In a suit by the creditors of the husband to subject said property to the payment of their debts the grantee of the husband is not a necessary party, because the conveyance, notwithstanding it may be void as creditors, will be, nevertheless, valid between the parties to it. (p. 203.)

The facts of the case appear in the opinion of the Court.

*H. M. Russell* for appellant.

*T. J. Hugus* for appellees.

SNYDER, JUDGE:

This is an appeal taken by Henrietta Weiler from a decree of the circuit court of Ohio county, rendered June 2, 1883, against the said Henrietta and her husband, Mark Weiler, in favor of the plaintiffs, Louis Herzog and Louis Herzog & Co.

The suit was commenced in July, 1882, and the plaintiffs allege in their bill that in April, 1877, the defendant, Mark Weiler, and one Deroy, partners then engaged in business as retail jewelers and pawn-brokers in the city of Wheeling, purchased from the plaintiff, Louis Herzog, a bill of jewelry, a part of which was afterwards paid and for the residue of one hundred and twenty-four dollars and seventeen cents he obtained a judgment against said Weiler in April, 1881;

| | |
|---|---|
| 24 | 199 |
| 34 | 185 |
| 24 | 199 |
| 35 | 767 |
| 24 | 199 |
| 37 | 406. |
| 24 | 199 |
| 45 | 669 |
| 24 | 199 |
| 47 | 719 |
| 24 | 199 |
| 48 | 228 |
| 48 | 420 |
| 24 | 199 |
| 52 | 50 |
| 24 | 199 |
| 53 | 410 |
| 24 | 199 |
| 54 | 460 |
| 24 | 199 |
| 55 | 505 |
| 24 | 199 |
| f65 | 720 |

that in November, 1877, the said Weiler, then in business alone as a retail jeweler and pawn-broker in said city of Wheeling, purchased from the plaintiffs, Herzog & Co., a bill of jewelry amounting to two hundred and forty-nine dollars and eighteen cents for which they obtained a judgment against him in April, 1881; that both of said judgments were rendered by a justice of Ohio county and execution issued on each, and was returned unsatisfied and no part of either of said judgments has been paid and said executions operate as liens on all the personal property of said Weiler.

The plaintiffs further allege that, on December 28, 1877, the said Weiler made a deed to one Marcus Baer, a brother of the appellant, who is the wife of said Weiler, which deed recites, "that the said Mark Weiler for and in consideration of the sum of four thousand two hundred and eighty-seven dollars, the receipt of which is hereby acknowledged, doth grant unto the said party of the second part, with covenant of general warranty, the following personal property, to-wit, all the stock in trade of the said party of the first part now in the building, numbered one thousand three hundred and four, on Market street, Wheeling, Ohio county, West Va., occupied by him as a pawn-broker establishment or place of business, including all jewelry, guns, pistols and liens on goods in pawn, fixtures and all other personal property of the said party of the first part on said premises;" that on February 9, 1878, the said Marcus Baer made a deed to one Max Baer, the brother of said Marcus and the appellant, conveying to said Max the same property by the same description for the consideration, as therein recited, of the sum of two thousand five hundred dollars, the receipt of which is acknowledged in the deed; that on the same day, February 9, 1878, the said Max made to his sister, the appellant, a deed conveying to her all of said property by the same description for her sole and separate use, reciting the consideration therefor to be five dollars and "the fraternal affection which he entertains for the said party of the second part."

The plaintiffs aver and charge that each and all of said deeds are voluntary and were made with intent to delay, hinder and defraud them and other creditors of said Mark

Weiler; that the said Marcus and Max Baer are quite young men, not worth above three thousand dollars each, and engaged with their father in the wholesale grocery business in Wheeling, and the said Marcus gave his whole personal attention to said grocery business during the time the title to said pawn-broker establishment purported to be in him, and he never gave said pawn-broker establishment or business any attention at any time; that said establishment was on December 28, 1877, and has been since continuously kept at the store-room, number one thousand three hundred and four Market street, and the said Mark Weiler was then the lessee of said store-room, conducting said establishment and business and he has so continued ever since; that he has all the time been the apparent and ostensible owner and sole conductor of said establishment and no sign was ever posted about said store-room indicating a change in the ownership. The only sign there now is headed "Weiler's Money Loan Office;" that a short time before the making of said deed of December 28, 1877, said Mark Weiler and his partner Deroy, who were also carrying on the jewelry and pawn-broker business in the city of Pittsburgh, Pa., failed, and when said Mark made said deed he was largely indebted if not entirely insolvent; that the consideration of four thousand two hundred and eighty-seven dollars expressed in the first of said deeds is a fair price for said property, but the same was worth more than two thousand five hundred dollars, the consideration named in the second of said deeds, and that all of said deeds were recorded in Ohio county at or about the times of their respective dates. The plaintiffs pray that said deeds may be declared null and void as against their executions and that so much of the property and goods in said store-room, number one thousand three hundred and four Market street, as may be necessary, may be sold to pay and satisfy said debts and liens and that they may have general relief.

Both the defendants, Mark Weiler and his wife, the appellant, demurred to and answered the plaintiff's bill, and there was a general replication to said answers.

The defendant, Mark Weiler, in his answer admits all the facts alleged in the bill except that the deed from him to

Marcus Baer was voluntary and that any of said deeds were made with intent to delay, hinder and defraud the plaintiffs or any of his creditors.  He avers, however, that before his sale to Marcus Baer the sign was "Mark Weiler," and that after said sale it was changed to read as alleged in the bill; that the said deed of December 28, 1877, from him "to Marcus Baer was *bona fide* and for a fair and adequate consideration and that said consideratian was received by himself," but he does not say when or in what manner it was paid or received by him.

Henrietta Weiler, the appellant, adopts, as part of her answer, the answer of said Mark so far as it is applicable. She admits that the deed from Max Baer to her was "a gift from him to herself of the property therein mentioned for the consideration of fraternal love and affection, and that she then believed and has ever since believed that it was the intention of her brother to give to her absolutely and for her sole and separate use the property therein described.  She says that not one of these deeds were made or procured by her to be made for the purpose or with the intent of hindering, delaying or defrauding the plaintiffs or the creditors of said Mark Weiler or of Deroy & Weiler, but that she believes and insists that they were all *bona fide* and without wrongful intent."  Except so far as this part of her answer may be regarded as such, none of the facts alleged in the bill are denied by the appellant.

The depositions of but two witnesses were taken.  One of of them, the cashier of the Exchange Bank of Wheeling, states, that Mark Weiler kept a deposit account in said bank in his own name up to March 4, 1878, at which time the account was at the request of said Mark, changed and thereafter kept in the name of H. Weiler, and that after as well as before said change said Mark drew the checks on said account for the money deposited by him to said accounts. He also exhibited with his deposition a copy of said account from the books of the bank, running from November 6, 1877, to February 18, 1878, which does not show that any deposit was made on December 28, 1877, but it does show that the largest sum deposited during that period was five hundred and twenty-eight dollars and fifty cents deposited on Decem-

ber 13, 1877.   The other witness was the agent of the lessor of the store-room, number one thousand three hundred and four, Market street, and he states, that the lease for said room is in his possession, though not then present, and he thinks the lessee is Mark Weiler or Deroy & Weiler, that Mark Weiler has paid the rent by checks drawn in the name of H. Weiler since he has been acting as agent, that is, since October or November, 1878.   These were the only depositions taken in the cause.

It seems to me the simple statement of this case is conclusive of the invalidity of the said deed to appellant as against the plaintiffs.   The question is not whether the conveyances in the bill mentioned are fraudulent in fact, but whether they are voluntary, and, therefore, fraudulent in law as to the debts of the plaintiffs.   These debts were contracted before the conveyance by the debtor, Mark Weiler, and unless said conveyance was founded upon a consideration deemed valuable in law, our statute declares it to be void as to such debts, and it is entirely immaterial whether the grantee knew of the existence of such debts or not.—Code, ch. 74, sec. 2; *Hunters* v. *Waite*, 3 Gratt. 26; *Lockhard & Ireland* v. *Beckly*, 10 W. Va. 87.

It is the settled law of this State, repeatedly announced in the decisions of this Court, that in a purchase by a wife, during coverture, the burden is upon her to prove distinctly that she paid for the property purchased with funds not derived from her husband; and evidence that she purchased the property amounts to nothing unless it is accompanied by clear and full proof that she paid for it with her own separate funds.—*Rose* v. *Brown*, 11 W. Va. 122; *Mc-Masters* v. *Edgar*, 22 Id. 673; *Stockdale* v. *Harris*, 23 Id. 499; *Seitz* v. *Mitchell*, 94 U. S. 580.

If this had been a purchase by the appellant it would come within the rule above stated and the burden would be on her to prove distinctly that she paid for the property.   In this case it is shown that the property came to the wife indirectly from her husband, and that she paid nothing for it. If it had come to the wife directly from the husband there can be no question that she, as against the existing creditors of her husband, would be compelled to prove clearly that she

paid a full consideration for it with her own seperate estate. The burden of proving such consideration would be upon her and not upon the creditors of her husband. Can the fact, then, that the property has been conveyed by the husband to a third party who shortly thereafter conveyed it to the wife as a gift, relieve her of such burden and place it upon the creditor? Will she not still have to prove that either she or her donor, or some one under whom her title is derived paid a valuable consideration for the property? Of course, if she can show that the person who gave her the property had a valid title to it as against the creditors of her husband, she would be entitled to hold it against such creditors, but in order to do so, it seems to me, to be unquestionable that she must prove to the satisfaction of the court, that either she or some person, other than her husband, under whom she claims title paid a valuable consideration for the property. To hold that a simple change in the form of the conveyance from the husband to the wife would shift the burden of proof would be most mischievous and unprecedented. If the property were real estate it would necessarily have to be conveyed thus indirectly; for our statute forbids a direct conveyance of such property between husband and wife.—Code, ch. 66, sec. 3. It would make fraud both profitable and easy. I do not think that either equity or sound principle requires us to so hold. On the contrary, the burden of proving the good faith and consideration of a conveyance to her of property, which was recently owned by her husband, is on the wife, whether she is the mediate or immediate grantee of her husband. Transfers of property, either directly or indirectly by an insolvent husband, during coverture, to his wife are justly regarded with suspicion, unless it clearly appears that the consideration was paid out of her seperate estate or by some one for her from means not derived from the husband. Such is the community of interest between husband and wife; such transfers are so often made a cover for a debtor's property, and so frequently resorted to for the purpose of withdrawing his property from the reach of his creditors and preserving it for his own use, and they hold forth such temptations for fraud, that they require close scrutiny. In a contest between the credi-

tors of the husband and the wife there is, and there should be, a presumption against her which she must overcome by affirmative proof.—*Scitz* v. *Mitchell*, 94 U. S. 580; *Walker* v. *Reamey*, 36 Pa. St. 410.

In this case there is no evidence whatever that either Marcus or Max Baer paid anything for the property in controversy, and it is admitted that the appellant paid nothing for it. If any consideration had been paid the means of proving it were peculiarly within the power of the appellant and her brothers under whom she claims the property. She elected to rest her title upon the answers of herself and her husband alone. These aver that a full consideration had been paid to the husband for the property, but to these answers there is a general replication. This, as we have attempted to show, placed the burden of proving such consideration on the wife, the appellant, and she has entirely failed to offer any evidence on that or any other subject. The case is, therefore, plainly against her.

It is insisted, however, by the counsel for appellant that Marcus Baer should have been made a party, and because he was not made a party the bill should have been dismissed, and he cites in support of that position, *Hagan* v. *Wardens*, 3 Gratt. 315, as precisely in point. That was a controversy in regard to real estate. The case at bar is about personal property. The same rules as to parties do not apply in the two cases: *Randolph* v. *Daly*, 16 N. J. Eq. 313; *Chapman* v. *P. S. R. R. Co.*, 18 W. Va. 184. In *Hagan* v. *Wardens*, the initiators of the fraud were not parties, while in this case Mark Weiler, the fraudulent grantor, is a party.

But it is a complete answer to this objection, that the bill charges the conveyance here to be fraudulent, and if such is not shown to be the fact, then the conveyance will be sustained; but if this allegation be true, the deed, although it may be set aside as to creditors, will still be valid between the parties and those claiming under it; and so in neither event could Marcus Baer be affected.—*Hall* v. *James*, 75 Va. 111; *McCutchen* v. *Pigue*, 4 Heisk. 565. The rule is undeviating, that no person need be joined in a suit in equity, either as plaintiff or defendant, upon the ground merely of having been a party to the contract or transaction, if he is no

longer interested in the controversy.—*Scott* v. *Ludington*, 14 W. Va. 387.

For the foregoing reasons, I am of opinion the decree of the circuit court must be affirmed.

AFFIRMED.