# CHARLESTON.

## STATE v. BOWEN, et al.

Submitted June 19, 1893—Decided November 18, 1893.

1. CREDITORS' BILL—FRAUDULENT CONVEYANCE—EXECUTION—PRACTICE.

Where a bill is filed by the State of West Virginia to set aside a fraudulent conveyance made by its judgment-debtor, and to subject land in the hands of the fraudulent grantee to the payment

of its judgment, it is not necessary, that an execution should have issued on said judgment, and that a return of *nulla bona* should be had before such bill can be sustained. Neither is it necessary to convene the creditors of such judgment-debtor, or to allege and show that the rents, issues and profits of the land sought to be subjected will not pay the debt in five years.

2. CREDITORS' BILL—LIENS—SALE—PRACTICE—FRAUDULENT CONVEYANCE.

In such a suit it is unnecessary to ascertain the liens existing upon the land before making a distribution of the proceeds of a sale of land made therein; and the party filing the bill and setting aside the conveyance is entitled to be first satisfied out of such proceeds, unless there are prior liens.

3. CREDITORS' BILL—FRAUDULENT CONVEYANCE—SALE—LIEN—PRACTICE.

In such a suit the State stands upon the same footing with any other creditor, as to enforcing its lien in equity against the land of a fraudulent grantee.

OKEY JOHNSON for the State :

*In a suit to set aside a deed as fraudulent as to the plaintiff's claim it is not necessary or proper to make the creditors of the fraudulent grantor parties;—nor is it necessary or proper in such a case to make the the joint judgment-debtors of the fraudulent grantor parties;—nor is it necessary in such a suit to allege in the bill the issuance of and return upon an execution issued upon such judgment;—nor is it proper in such a suit to enquire whether the rents and profits of the land sought to be subjected will pay the judgment in five years.—27 W. Va. 207 ; 9 W. Va. 452 ; 24 W. Va. 730 ; 22 W. Va. 434 ; 29 W. Va. 703 ; 31 W. Va. 156 ; 33 W. Va. 130.*

COUCH, FLOURNOY and PRICE for appellees, cited 8 W. Va. 213 ; 28 W. Va. 308 ; 19 W. Va. 671.

ENGLISH, PRESIDENT :

On the first Monday in September, 1891, the state of West Virginia filed its bill in the Circuit Court of Kanawha county against Alderson Bowen, B. J. Pritchard and W. B. Spurlock, in which it alleged that on the 11th day of December, 1890, said state, as plaintiff in an action at law brought in the Circuit Court of said county against William E. Wilkinson, late sheriff of Wayne county, and

Alderson Bowen and others, sureties on the official bond of said W. E. Wilkinson, sheriff *etc.*, for the default of said sheriff, recovered a judgment for eighteen thousand seven hundred and forty seven dollars and sixty five cents with interest and costs, a copy of which judgment was exhibited with said bill. It further alleged that an execution on said judgment issued to the sheriff of Wayne county, which was by said sheriff levied on all the real and personal property found by him in the name of the defendants in said judgment, and that said sheriff under said execution on the 28th day of September, 1891, sold all of said property, and it did not bring half the amount of said judgment;—that Hugh Bowen, the father of the defendant Alderson Bowen, died seised of a valuable tract of land in and near the county-seat of Wayne county, containing about one hundred and forty seven and a half acres;—that he left three sons, Hugh Bowen, Alderson Bowen and Abraham Bowen;—that Hugh Bowen sold his interest to Rebecca Trogden;—that from —— to 1873 suit was brought by Rebecca Trogden and William Trogden, her husband, in the County Court of Wayne county in equity for partition, and the said property was partitioned among those having a right thereto. Copies of the decree for said partition, the report of the commissioners who made the same, and the decree confirming said partition, all of which have been recorded in the records of the office of the clerk of the County Court of Wayne county, were filed as a part of said bill.

Said bill further alleged that it would appear from said report of the commissioner that the part set off to Alderson Bowen, the defendant, was forty eight acres and one hundred and twenty one poles, which was laid off to him by metes and bounds, and thereafter the same was confirmed, and he held the legal title thereto without any deed being made to him;—that after the default of said W. E. Wilkinson, sheriff, which occurred in 1883 and 1884, there was a fixed liability on said Alderson Bowen to the plaintiff in the full amount of the indebtedness at that time, which with its interest amounted to the judgment aforesaid on the 11th day of December, 1890;—that on

the 11th day of October, 1890, the said Alderson Bowen and wife conveyed to the defendants B. J. Pritchard and W. B. Spurlock about eight acres of the said tract of land, lying at and in Fairview, the county-seat of Wayne county, (a copy of which was filed as part of said bill) the consideration in said deed being one thousand and seventy five dollars.

The plaintiff charged that said one thousand and seventy five dollars were not paid to said Alderson Bowen ;—that at the time of said conveyance the said Alderson Bowen knew that there was liability on him to the state of West Virginia, this plaintiff, for more than he was worth, and that his purpose and intent were, when he made said conveyance, to hinder, delay and defraud the plaintiff in the collection of its claims against him ;—that several years before the time of said conveyance, he had been served with notice of a motion for a judgment against him in the Circuit Court of Kanawha county, which motion was at the time of said conveyance, and still is, pending and undetermined. All the papers in said motion case were asked to be taken and read as a part of said bill. Said bill further charged that at the time of said conveyance the defendants B. J. Pritchard and W. B. Spurlock well knew the liability of said Alderson Bowen to the plaintiff, and well knew that he had been served with the notice as aforesaid.

And plaintiff further charged, that, if the whole consideration named in said deed, one thousand and seventy five dollars as therein set out to be paid, was paid, it was greatly inadequate;—that said property was then, and is now, worth more than four times the consideration named in the said deed. And plaintiff charged that the object, intent and purpose of the said Bowen in making said conveyance were to prevent the said property from being sold to pay the said claim he owed the state, to hinder, delay and defraud the state in collecting its said claim against him ;—that the said B. J. Pritchard and W. B. Spurlock had knoweldge of such intent and purpose, and bought the said property at less than one fourth of its value, to aid and assist the said Bowen in his said fraudulent purpose.

It was again charged by the plaintiff that no consideration was paid, but that it was agreed that they (the grantees) would pay the low price of one thousand and seventy five dollars, if they were permitted to hold the property;— that said suit was brought to September rules, and plaintiff recorded a *lis pendens* in the office of the clerk of the County Court of Wayne county. And said *lis pendens* with the evidence of its being recorded was filed as part of said bill.

And the plaintiff prayed that said deed from Alderson Bowen to B. J. Pritchard and W. B. Spurlock might be declared fraudulent as to plaintiff's said claim and judgment against the defendant Alderson Bowen, and the said eight acres of land be subjected to the payment of said claim and judgment, and for general relief.

To this bill the defendants Pritchard and Spurlock demurred; (1) because said bill was insufficient in law; (2) because the facts alleged in the bill were not sufficient to invoke the aid of a court of equity, and because plaintiff's remedy, if any it had, was complete at law; (3) because necessary parties were not brought before the court, and the relief prayed for could not in any event be granted, until they were made parties to said suit; (4) because it appears on the face of the bill that at the institution of the suit no execution or *fieri facias* on plaintiff's judgment had · been returned to the office of the court, from which it was issued, showing by the return thereon that no property could be found, from which such execution could be made, it appearing from the bill that said judgment was rendered within two years from the institution of said suit. Said demurrer having been considered by the court was sustained, and the plaintiff's bill was dismissed; and from this decree the plaintiff obtained this appeal.

The question we are to consider and determine is whether or not the Circuit Court committed any error in sustaining said demurrer.

Now, while it is true that the state has an additional mode of enforcing its judgments and claims against the real estate of its debtor, provided by statute, which is not conferred upon the private creditors, to wit, by levying

upon and selling the real estate of such debtor, when there is no question as to the ownership of such real estate, and the title is unobscured by any shadow of fraud, yet when fraud does intervene, and it becomes necessary to invoke the aid of a court of equity to clear away the apparent clouds upon the title, and subject the real estate of such debtor to the payment of its demand, is there anything in the statute which prevents the state, like any other creditor, from having the benefit of section 2, c. 133, of the Code, which provides that a creditor before obtaining a judgment or decree for his claim may institute a suit to avoid a gift, conveyance or transfer of or charge upon the estate of his debtor, which he might after obtaining such judgment or decree; and he may in such suit have all the relief in respect to said estate, which he would be entitled to after obtaining a judgment or decree for the claim, which he may be entitled to recover?

The state in this case is a "creditor," and that would seem all that would be requisite to entitle it to the benefit of said section. In this case, however, the state appears to have obtained a judgment against the appellees Alderson Bowen and others before it instituted this suit in equity. Can we say that this fact placed the state in any different attitude with reference to the alleged fraudulent conveyance than it would have been in, if it was merely the owner of the claim by reason of the default of Sheriff Wilkinson?

Section 2, c. 133, was intended to confer upon a creditor, who had not obtained a judgment, the same right as to instituting a suit to avoid a gift, conveyance, *etc.*, which he would have after obtaining such judgment or decree. Therefore the state as a creditor occupied no worse position as to maintaining a suit to avoid a gift, conveyance *etc.*, but precisely the same, after obtaining such judgment, as it did before; that is as any other creditor.

Now, while it is true that section 7, c. 139, of the Code, provides the manner, in which a judgment-lien may be enforced against the real estate of a debtor, and provides for the distribution of the proceeds of the sale among the lienholders, this section is intended to apply, when the title of the real estate sought to be subjected is in the

debtor, when it is plain sailing, and no obstruction inter-venes. When, however, the creditor is compelled to re-sort to the provisions of chapter 74 to remove the effects of a fraudulent conveyance, and to use a search.light to discover the legal title, new and different rights are accord-ed to the successful plaintiff. It is not necessary that he should convene the creditors and make distribution among them, as is provided in section 7, c. 139. The property, if subjected, is subjected as the property of the fraudu-lent grantee, and the conveyance is only held void as to the plaintiff's claim; it being considered valid and binding as between the parties.

In a suit of this character the plaintiff calls upon no creditor to join him and assist in the prosecution of the suit. In unearthing the fraud and subjecting the real estate to the payment of his claim, he strikes out alone and unaided and is not compelled to call in any one to share in the proceeds, when captured. It is not required to be either alleged or ascertained, that the rents, issues and profits of the land will not pay the debts in five years, before there can be a sale of such land. The fact, that such suit may be maintained by a creditor under section 2, c. 133, of the Code, before obtaining a judgment, shows conclusively that a judgment, on which an execution has been Issued with a return of *nulla bona,* is not required as a condition precedent to such proceeding to set aside a fraudulent conveyance as to the creditor. When the plain-tiff is successful in a suit of this character, he only un-covers enough of the property fraudulently conveyed to satisfy his demand, and to the portion of the land so dis-covered and subjected the law gives him the priority of lien. See *Claflin* v. *Foley,* 22 W. Va. 434. But no such right accrues to a creditor who files his bill under section 7, c. 139, to enforce his judgment against his debtor's land.

In the case of *Core* v. *Cunningham,* 27 W. Va. 210, SNYDER, J., in delivering the opinion of the court, draws the distinction between the proceeding to subject land under these utterly different statutes. He says: "It is further contended for the appellants that the court should have referred the cause to a commissioner to ascer-

tain the liens and priorities against the land, and to ascertain whether or not the rents and profits would pay the debts in five years. These contentions are evidently founded upon a misapprehension of the object of this suit. It is not simply to enforce a judgment-lien against real estate. Its real purpose is to set aside, as to the plaintiff's debt, a fraudulent conveyance, and subject land in the hands of the fraudulent grantee to the payment of such debt. The deed, though ever so fraudulent as to the creditors of the grantor or the husband who paid the purchase-money, is nevertheless valid and binding between the parties to the fraud;" citing *Murdock* v. *Welles*, 9 W. Va. 552; *Duncan* v. *Custard*, 24 W. Va. 730. "* * * The land should be regarded and sold as hers, and not as the property of her husband. In cases of this character, it is not proper to convene the husband's creditors, nor to rent the land."

In the case of *Sweeny* v. *Sugar Refining Co.*, 30 W. Va. 443 (4 S. E. Rep. 431) this Court held that "general creditors, who by bill, answers or petition assail a deed of their debtors conveying land as fraudulent and succeed, have a lien on such land for their respective debts from the filing of such bill, answer or petition." See, also, *Clark* v. *Figgins*, 31 W. Va. 156 (5 S. E. Rep. 643).

Not only the object of the suit under these respective chapters of the Code but the mode of procedure and the results are so radically different, that one can not be said to repeal the other by implication, or to take its place in affording a remedy. In note 4, pp. 154, 155, of Potter's Dwarris on Statutes, it is said: "The American authorities are to the same effect. A statute can be repealed only by an express provision of a subsequent law, or by necessary implication. To repeal a statute by implication, there must be such a positive repugnancy between the provisions of the new law and the old that they can not stand together, or be consistently reconciled;" citing *McCool* v. *Smith*, 1 Blacke, 459; *Wood* v. *U. S.*, 16 Pet. 342; *Com.* v. *Easton Bank*, 10 Pa. St. 448; *Hareford* v. *U. S.* 8 Cranch, 109; *Brown* v. *County Com'rs*, 21 Pa. St. 37.

In *McCool* v. *Smith*, 1 Black 470, Justice Swayne said:

"A repeal by implication is not favored. The leaning of the court is against the doctrine, if it be possible to reconcile the two acts of the legislature together; and, where a late statute is absolutely repugnant to a former one only in part, it repeals the former, only so far as the repugnancy extends, and leaves all the remainder in force. *Van Rensselaer* v. *Snyder*, 9 Barb. 308," *etc*.

We, however, find no difficulty in reconciling these statutes. It is where a bill is filed by a judgment-creditor to subject the debtor's land, that the proceeding is to be had under section 7, c. 139; but when the object of the suit is to subject to sale land in the hands of a fraudulent grantee for the payment of a debt or judgment against the fraudulent grantor, then section 2, c. 133 of the Code applies, and also the provisions of chapter 74 of the Code, whether the plaintiff be the State or a private creditor.

It is true that in this case the State had obtained a judgment, and an execution had been issued against W. E. Wilkinson and others, including the defendant Alderson Bowen, for eighteen thousand seven hundred forty seven dollars and sixty five cents; and it appears on the face of the bill, that said execution was levied on all of the real and personal property found by the sheriff in the name of the defendants, and that said property was sold on the 28th day of September, 1891, and did not bring half the amount of said judgment. It is also true that there can be but one satisfaction of the same judgment. But the bill shows that, after selling the property found, a large sum of money— over nine thousand dollars—yet remained unpaid; and then the bill contains the usual and all of the necessary allegations with reference to the fraudulent conveyance of the land in the bill mentioned by the defendants Alderson Bowen and wife to the defendants B. J. Pritchard and W. B. Spurlock. The judgment appears to have been rendered against the defendants on the 11th day of December, 1890, and the deed was made on the 11th of October in the same year; so that the deed must have been made after the process was served.

As to the third point of the demurrer, to wit, the want of necessary parties, the defendants do not suggest who

are necessary parties; but the counsel for the appellees in their brief in support of said point contend that the sheriff and the other seventeen sureties on his bond should have been made parties to the suit. The bill however shows that over nine thousand dollars of the judgment remains unpaid, and is seeking to subject this tract of land in the hands of Pritchard and Spurlock as fraudulent grantees of Alderson Bowen. Said Bowen, Spurlock and Pritchard are all made parties; and if the entire judgment is made out of this land the other judgment-debtors could not complain, as it would be in their favor, not against them.

But this question has been settled in this State in the case of *Howard* v. *Stephenson*, 33 W. Va. 116 (10 S. E. Rep. 66). In that case, Howard, special receiver, had a judgment against Stephenson & Rothschild; and, in a suit in chancery to subject the land of Stephenson to the payment thereof it was held, that it was unnecessary to make Rothschild a defendant, as the plaintiff sought no redress against him or his property. No redress is sought in this case against the sheriff, Wilkinson, or his other sureties, against whom the judgment was obtained.

If it is said that the defendant Bowen could complain of making this judgment off his land, the answer is that he is before the court, and so are Spurlock and Pritchard, and under the ruling in *Howard* v. *Stephenson*, no other parties were necessary. And, so far as we can perceive, the plaintiff in formulating its bill having made all the requisite allegations, our conclusion is the court committed an error in sustaining said demurrer; and for these reasons the decree complained of must be reversed, and the cause remanded with costs.