# CHARLESTON.

## DOUTHAT, *Trustee,* v. ROBERTS *et al.*

### Submitted December 2, 1913.   Decided December 9, 1913.

1. DEEDS—*Date of Delivery—Presumption—Rebuttal.*

   The presumption that the date of a deed is the date of its delivery may be rebutted by evidence, even though only circumstantial, that the deed was delivered at a time later than its date.  (p. 359).

2. FRAUDULENT CONVEYANCES—*Consideration for Deed—Burden of Proof.*

   A deed made by a father to his children while he is insolvent is prima facie void as to existing creditors, and the burden is on the parties to the deed to show otherwise by proving a consideration therefor deemed valuable in law.  (p. 360).

3. BANKRUPTCY—*Action by Trustee in State Court—Personal Judgment Against Bankrupt.*

   In a suit in a court of this state by a trustee in bankruptcy to set aside a voidable transfer of property made by the bankrupt, it is error of which the bankrupt may complain to decree a personal judgment against him in favor of the trustee for the aggregate of the debts allowed in the bankruptcy proceedings.  (p. 360).

4. SAME—*Action by Trustee—Jurisdiction of State Court.*

   In such a suit the state court may set aside the transfer and thus vindicate the right of the trustee to take the property into the bankruptcy court as assets, but it has no province to order a sale of the

property and an application of the proceeds toward the payment of the debts of the bankrupt. (p. 362).

Appeal from Circuit Court, Cabell County.

Suit by R. S. Douthat, trustee, etc., against H. W. Roberts and others. From decree for plaintiff, defendants appeal.

*Affirmed in part. Reversed in part.*

*L. L. Wilson,* for appellants.

*Switzer & Wiatt* and *J. P. Douglass,* for appellee.

ROBINSON, JUDGE:

The appeal is from a decree which sets aside, as to creditors, a deed conveying real estate, and orders the property sold for the payment of debts.

The deed was made by H. W. Roberts to his four minor children, the eldest of whom was eleven. It was dated November 4th, 1906, but was not recorded until December 30, 1908. During the year 1908, Roberts incurred the debts involved. Within a month after the deed was recorded, he filed a voluntary petition in bankruptcy, and was adjudged a bankrupt. The assets returned by him were small in comparison with the debts. All the debts were simple contract ones. The trustee in bankruptcy was authorized by an order of the bankruptcy court to bring a suit attacking the deed which Roberts made to his children as having no validity against the claims of his creditors. The suit in which we have this appeal was thereafter instituted by the trustee. The bill alleged that the deed was not delivered to the grantees by Roberts until the recording of the same operated as a delivery, that it was without consideration deemed valuable in law, and that it was made to hinder, delay, and defraud creditors. Roberts by his answer denied all these allegations, to which answer the trustee replied generally. The infant grantees were represented by guardian ad litem, who filed the usual answer for them. Depositions were taken and filed on behalf of the trustee. No evidence was offered by any of the defendants. On a hearing the decree complained of was entered. Roberts and the infants, by their guardian ad litem, join in the appeal.

The evidence warrants the conclusion that there was no

delivery of the deed by the grantor until the recording operated as a delivery to the infant grantees. True, the date of the deed is presumably the date of its delivery. But the facts and circumstances in this case sufficiently repel the presumption that the deed was delivered at its date. The acts of Roberts in relation to the property, the situation of the parties to the deed, and all the other circumstances surrounding the existence of that instrument, tend to establish that no delivery was made until Roberts had incurred large indebtedness and was hopelessly insolvent, at which time the grantor first manifested intention to relinquish the deed. Though the evidence that the deed was not delivered until it was filed for record is only circumstantial, it is clearly sufficient to establish the fact, in the absence of anything to the contrary. The reasonable inference is strong and unrebutted that Roberts never expressed intention to part with the deed so as to vest title in the infant grantees, until the instrument was filed for record with a view of keeping creditors from taking the property for their debts. "The question of delivery is one of intention, and the rule is that a delivery is complete when there is an intention manifested on the part of the grantor to make the instrument his deed." Devlin on Deeds, (2nd ed.) sec. 262. That Roberts manifested intention to make the instrument his deed before the act of allowing it to be recorded, is fully negatived.

When the instrument became an operative deed by its delivery, the grantor was unquestionably insolvent. Moreover, as the pleadings and proofs stand, the deed was voluntary and therefore void as to the debts of the grantor, all of which existed when the conveyance was actually made by the delivery of the instrument. The bill having attacked the deed as voluntary, it was incumbent on the defendants to show a consideration deemed valuable in law. *Knight* v. *Nease*, 53 W. Va. 50, and cases therein cited. They made no effort to show a bona fide consideration. Therefore the deed stood as one prima facie void as to the creditors in whose behalf the trustee attacked it, and the decree annulling it as to them was rightly ordered.

The decree, however, goes further. It embraces a personal judgment against Roberts in favor of the trustee in bank

ruptcy for the aggregate sum of all the debts allowed by the bankruptcy court against the estate of the bankrupt. Roberts complains of this, and there is merit in his assignment in that particular. Nowhere does the federal bankruptcy act give the trustee resort to the state court for the purpose of taking personal judgment against the bankrupt on the claims of creditors. It gives the trustee resort to the state court to avoid transfers of property like the deed of Roberts to his children, and thus to bring into the bankruptcy court the property as assets there to be administered toward the payment of the claims of creditors. The act gives the trustee title to the property of the bankrupt and the right to go into the state court to clear such title from voidable transfers. It gives him the right there to sue for, recover, and bring into the bankruptcy court, the assets of the bankrupt. But it gives him no other right in the state court. It does not clothe him with the right to a personal judgment against the bankrupt on the claims of creditors. Since the trustee does not have that right vested in him by the law, it was clearly not proper to decree to him what by his fiduciary office does not belong to him. The bankruptcy act gives neither the bankrupt court nor the state court authority to enter personal judgment in favor of the trustee against the bankrupt on the claims of creditors. Those claims are to be adjudged to the creditors themselves in the bankruptcy proceedings. The state court is as well bound by the federal bankruptcy law as is the court of bankruptcy. "The bankruptcy act is the law of the land. It is binding on all courts." *Maxwell, Trustee,* v. *Davis Trust Co.,* 69 W. Va. 278. What that act has not given to a trustee in bankruptcy no court can properly give him. Clearly, Roberts may complain of the personal judgment against him in favor of one who has shown no right to the same. Under what provisions of the bankruptcy act is this personal judgment of the state court in favor of the trustee to be carried into the bankruptcy court, the assets applied thereto, and the bankrupt discharged therefrom? Roberts, having invoked the bankruptcy court, is entitled to have all adjudication on claims against him made therein under the systematic and beneficial provisions of the federal law governing the same.

The decree goes still further and orders the property to be sold by special commissioners, for cash and deferred payments, and the proceeds to be applied by those commissioners to the payment of the debts and demands proved in the bankruptcy court. And all this, notwithstanding the bill plainly shows the pendency of the bankruptcy proceedings. The bankruptcy act gives the state court no such power of aiding in the sale and administration of the assets of the bankrupt. Perhaps it will be said that the trustee or the bankruptcy court is not complaining. But the bankrupt is. He is entitled to have his assets sold and administered in the forum which he sought for that purpose and to have the benefit of the regular, efficient, and prompt proceedings thereunto appertaining. By the bankruptcy act, the state court is given jurisdiction to aid the bankruptcy court in getting in the assets of the bankrupt —in asserting the title of the trustee thereto. The act does not provide for, nor does it ordinarily contemplate, the aid of the state court in the sale and administration of the bankrupt's assets. The state court certainly has no right to entrench upon the previously invoked jurisdiction of the court of bankruptcy over the protest of the bankrupt, who is entitled to the administration and adjudication vouchsafed to him by the federal law.

In so far as the decree complained of sets aside and avoids as to creditors the deed made by Roberts to his children the same will be affirmed. In all other respects the decree will be reversed and wholly set aside. Thus the trustee, as far as the rights of creditors is concerned, is given title to the property which Roberts sought to set over to his children, so that the same may be taken into the court of bankruptcy and there dealt with as assets of the bankrupt pursuant to the bankruptcy law.

*Affirmed in part. Reversed in part.*