SAMUEL SOLINS

*v.*

RICHARD A. WHITE *et al.*

(No. 9703)

Submitted October 2, 1945. Decided November 20, 1945.

*Mahan & White,* for appellant.
*Love & Love,* for appellees.

RILEY, JUDGE:

The plaintiff, Samuel Solins, brought this chancery suit in the Circuit Court of Fayette County against Richard A. White, Viola D. White, Raymond A. White, and others, for the purpose of setting aside the deed of P. H. Brown, dated July 8, 1936, conveying to the defendant, Raymond A. White, 106.25 acres of surface land in Fayette County, and to subject said tract of land to the payment of the judgment lien of the plaintiff, Samuel Solins.

The defendants, Richard A. White and Viola D. White, owned jointly the 106.25 acres of land involved in this suit under a deed of Virginia Dearing and others, dated March 25, 1922, which recited a consideration of $4788.00. After the conveyance the Whites entered on the land, and were occupying it as their home at the time and during the pendency of this suit. There were three liens against the property in the following order

of priority: (1) A deed of trust, dated August 20, 1927, to secure the Federal Land Bank of Baltimore in the payment of the joint note of Richard A. White and Viola D. White for $1800.00; (2) a deed of trust dated March 11, 1930, to B. A. Roberts, Trustee, to secure the Sewell Valley Bank in the payment of a joint note of said Whites for $2,290.00; and (3) a judgment in the amount of $1,501.38 of U. S. Seal, receiver for Alderson National Bank, rendered by the Circuit Court of Fayette County on April 23, 1932, which judgment was assigned for a valuable consideration to the plaintiff, Samuel Solins. The judgment was docketed on April 27, 1932, in the County Court Clerk's office of Fayette County.

The Sewell Valley Bank ceased to do business on May 30, 1932, and its assets were taken over by The First National Bank of Hinton for liquidation. At the time the Sewell Valley Bank was closed, Richard A. White owned five shares of its stock. White failed to pay his liability of $500.00 as a stockholder, and he and his wife defaulted in the payment of the Sewell Valley Bank's deed of trust indebtedness. The Hinton bank requested a foreclosure of the deed of trust, and P. H. Brown, its president, who evidently was acting for it, and Richard A. White entered into an arrangement whereby Brown would purchase the land at a foreclosure sale for at least three hundred dollars, and thereafter would convey the land to Richard A. White, or to whomever he might designate, upon the payment of $1,000.00 on the indebtedness due the Sewell Valley Bank and the assumption of the balance of the debt owed the Federal Land Bank of Baltimore.

On March 28, 1936, Roberts, trustee under the deed of trust securing the indebtedness due to the Sewell Valley Bank, sold the land at public auction to Brown for the sum of $300.00. Thereafter the board of directors of The First National Bank of Hinton approved the arrangement between Brown and Richard A. White; but no deed was made to Brown until about three and one-half months after the sale. In the meantime Richard A.

White made diligent effort to obtain the $1,000.00 necessary to satisfy the Sewell Valley Bank indebtedness. Finally, on or about July 15, 1936, he obtained $800.00 from the Fayetteville Building & Loan Association, which was carried on the loan company's records in the names of T. L. White and Raymond A. White, Richard A. White's sons, and Grace M. White, and delivered the loan company's check for $800.00, together with two other checks aggregating $200.00 to Brown in payment of the $1,000.00 due, and $75.00 to pay the expense of the trustee's sale. Coincident with this payment a deed from Roberts, trustee, to P. H. Brown, and from P. H. Brown to the defendant, Raymond A. White, each dated July 8, 1936, were delivered to Richard A. White, who had them recorded. At that time Richard A. White owed the Federal Land Bank of Baltimore $1,610.24, of which he has since paid $756.44.

On October 21, 1941, within ten years following the rendition and docketing of plaintiff's judgment, plaintiff brought this suit, in which he sought to establish an alleged fraudulent intent of Richard A. White and Raymond A. White to delay, hinder and defraud plaintiff as a creditor of Richard A. White in the collection of plaintiff's judgment by having the land deeded from Brown to Raymond A. White, instead of having a conveyance made to Solins' judgment debtor, Richard A. White, which plaintiff claims is in violation of Code, 40-1-1.

The bill of complaint alleges that the deed of trust of the Federal Land Bank of Baltimore was the only lien against the property, other than plaintiff's judgment lien, and was prior thereto. It prayed, among other things, that reference be had to a commissioner for the purpose of having the liens against the property ascertained and that the property be sold subject to the deed of trust of the Federal Land Bank should it so elect. The latter appeared and asserted in its answer that it objected to any sale other than that which was subject

to its deed of trust, and was dismissed as a party defendant.

The matters involved in this suit were referred to a commissioner in chancery who reported the deed of Brown to Raymond A. White was made with intent to defraud Richard A. White's creditors and did defraud plaintiff to the extent that Richard A. White supplied a part of the purchase price of the land, but that the one-half undivided interest of Viola D. White was not affected by the transaction for the reason she did not participate in the fraud. The circuit court, in affirming the commissioner's report, held that Richard A. White intended by the conveyance under attack to defraud his creditors to the extent that he supplied one-half of the money entering into the purchase price of the property, Raymond A. White furnishing the other half thereof; that Viola D. White had no part or knowledge of Richard A. White's fraud; that the defendant, Raymond A. White, knew of his father's fraudulent intent; and that the conveyance of Roberts, trustee, to Brown, pursuant to the foreclosure sale, was free from fraud. Upon the basis of this holding the court decreed: (1) That Viola D. White's undivided interest in the land was not affected by the fraud; (2) that the fraud affected only the money paid by Richard A. White in redeeming the land under the White-Brown arrangement after the foreclosure sale; (3) that Raymond A. White might avoid the effect of the alleged fraudulent transaction by paying to plaintiff the sum of $537.50; (4) that the sale of the land caused it to be discharged from plaintiff's judgment lien; and (5) decreed a sale of the property subject to the Federal Land Bank's deed of trust.

The record discloses that Viola D. White had no knowledge of Richard A. White's alleged fraudulent intent. The evidence conflicts on the question whether Raymond A. White furnished one-half of the purchase price of the property. Likewise there is a conflict in the evidence whether Raymond A. White, at the time the conveyance was made, knew of the alleged fraud. Richard A. White

says he did, as he and his son had discussed it. Raymond A. White says he did not. The record seems to indicate that after the conveyance from Brown to Raymond A. White the relations between Richard A. White and his son became strained.. Be that as it may, the plaintiff, Samuel Solins, except for verifying the bill of complaint and authorizing the bringing of the suit, took no part in its prosecution. He did not testify and the record does not disclose that he was present during the course of the proceedings. However, the judgment sought to be enforced was fully proved and the fact that it was wholly unsatisfied was established. For some time prior to the foreclosure sale, and at the time thereof, both Richard A. White and Viola D. White were insolvent. She had no personal property and he had very little.

Initially the defendant, Raymond A. White, attacks plaintiff's right to maintain this suit. It is contended that (1) the conveyance in question was voluntary, tainted with constructive fraud, and that plaintiff is barred under Code, 40-1-4, which provides for a five-year limitation of suit to avoid voluntary transfers or charges; (2) plaintiff was guilty of laches in that he caused no execution to issue on the judgment, though at the time there was valuable personal property at the Richard A. White home subject to levy, and nevertheless plaintiff did not bring this suit until nearly nine years had elapsed from the time the judgment was entered, docketed and assigned to him, and in the meantime defendant was caused to alter his position by purchasing the personal property on the White homestead which would have been subject to levy had execution been issued and by continuing to make payments on the indebtedness due the Federal Land Bank of Baltimore; and (3) that it is necessary that the requirements as to a creditor's suit be followed.

Defendant's first position is clearly unsound. This is a suit under Code, 40-1-1, to set aside a conveyance deemed fraudulent and not a suit under Code, 40-1-4, to set aside a conveyance on the ground that it is voluntary.

The five-year limitation provided for in the latter statute has no application to this case.

Defendant's second position, in our opinion, is equally untenable. In this State laches "is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right." Pt 2 syl., *Bank of Marlinton, Assignee* v. *L. P. McLaughlin,* 123 W. Va. 608, 17 S.E. 2d 213. Plaintiff's delay in the institution of this suit did not cause Raymond A. White to alter his position to his disadvantage. He obtained the personal property, which he bought, and the benefit thereof, and the payments which he made to the Federal Land Bank of Baltimore were in the full face of plaintiff's recorded judgment, and with knowledge that the conveyance to him was tainted with fraud. Plaintiff's judgment being properly docketed, as provided by Code, 38-3-7, was a valid lien against any real estate owned by Richard A. White.

Likewise defendant's third position that plaintiff failed to follow the requirements of a creditor's suit is without merit. Richard A. White, whose status is substantially tantamount to that of a fraudulent grantor, Raymond A. White, the grantee, who participated in the grantor's fraudulent intent, the personal representatives of P. H. Brown, the beneficiaries under his will, and those who would be his heirs at law had he died intestate, and the Federal Land Bank of Baltimore, the holder of the first, and only lien against the property, other than that of plaintiff, were made parties defendant to this suit. In a suit to set aside a conveyance as in violation of Code, 40-1-1, the grantor and his alienee are necessary parties. 1 Miller's Hogg's Equity Procedure, 3d Ed. Section 70. The personal representatives of P. H. Brown, his heirs and beneficiaries under his will are proper parties, but they are not necessary parties. A person through whom a fraudulent conveyance passes, and who acts only as a medium to transfer title to another, is not a necessary party defendant. 1 Miller's Hogg's Equity Procedure,

3d Ed. Section 70, citing *Kirby* v. *Steele*, 65 W. Va. 719, 64 S.E. 919, and *Herzog* v. *Weiler*, 24 W. Va. 199. In a suit such as this it was unnecessary to make Richard A. White's creditors parties. *Core* v. *Cunningham*, 27 W. Va. 206; *Powers-Taylor Drug Co.* v. *Faulconer*, 52 W. Va. 581, 600, 44 S.E. 204; *Colston* v. *Miller*, 55 W. Va. 490, 47 S.E. 268. And it is unnecessary that execution be issued and recorded on plaintiff's judgment or the defrauded creditors convened. *State* v. *Bowen*, 38 W. Va. 91, 18 S.E. 375; *Wilt* v. *Shaffer*, 117 W. Va. 291, 185 S.E. 237; *Crickmer* v. *Thomas*, 120 W. Va. 769, 200 S.E. 353.

Appellant contends here that the trial court erred in decreeing: (1) That the undivided one-half interest in the land went to Raymond A. White free from any charge of fraud; (2) that Richard A. White's fraud affected only the money paid by him under the White-Brown arrangement as to the foreclosure sale, and therefore Raymond A. White might avoid the effect of the alleged fraudulent transaction by paying to plaintiff the sum of $537.50; (3) that the sale caused the land to be discharged from plaintiff's judgment lien; and (4) that it was error to award costs to defendant. For convenience these grounds will be discussed seriatim.

The record discloses that Richard A. White entered into the arrangement with Brown with the fraudulent intent of delaying, hindering and defrauding his creditors and, in view of the conflict of the evidence and the court's finding, it must be said that Raymond A. White knew of his father's fraudulent intent at the time he accepted the conveyance in question, and so knowing he was a participant in the fraud. Where, as here, the transaction is between a father and son only slight evidence is required to shift the burden of showing the *bona fides* of the transaction. *Mankin* v. *Davis*, 82 W. Va. 757, 97 S.E. 296. A deed from an insolvent father to a son, though through a mediary, is *prima facie* void as to existing creditors. *Douthat* v. *Roberts*, 73 W. Va. 358, 80 S.E. 819. The right of a defrauded

creditor, under Code, 40-1-1, to have an alleged fraudulent deed set aside is not affected by the fact that the grantee paid a valuable consideration for the grant, where, as here, the grantee participated in the fraudulent intent. *Goshorn's Ex'r* v. *Snodgrass*, 17 W. Va. 717; *Hedrick, Hogeman and Brown, Comm'rs* v. *Walker*, 17 W. Va. 916; *Livesay's Ex'r* v. *Beard*, 22 W. Va. 585; *Gillespie* v. *Allen*, 37 W. Va. 675, 17 S.E. 184. The deed from Brown to Raymond A. White, being the outgrowth of the fraudulent arrangement between Richard A. White and Brown, in which Raymond A. White participated is void *in toto*. *Livesay's Ex'r* v. *Beard*, *supra*, pt. 2 syl. It would be inequitable for us to hold that because Raymond A. White's mother, Viola D. White, did not participate in the fraud, he is entitled to her one-half undivided interest in the property. However, the fact that Viola D. White did not participate in the fraud is of no moment, because she joined with her husband in the execution of the White-Roberts deed of trust, and jointly with him signed the note secured thereby. The foreclosure sale served to divest her of any interest in the property.

What has just been said, we think, answers the defendant's contention that the circuit court did not err in holding that the conveyance was fraudulent only to the extent of the money paid by Richard A. White, and that by the payment of $537.50 he could take the whole property absolutely. Surely a deed in fraud of creditors, in which fraud the grantee participated, cannot be valid in part and void in part. If it is true, as Raymond A. White contends, that he paid a part of the purchase price for the property, it is equally true that a fraudulent grantee has no recourse in a court of equity to retrieve the amount he may have paid in pursuance of a fraudulent transaction.

The conveyance being void, the trial chancellor, in our opinion, erred in holding that the fraudulent conveyance served to discharge plaintiff's judgment lien. Plaintiff, therefore, is entitled to maintain this suit and to assert

in it his lien against the property conveyed in fraud of his rights as a judgment lien creditor.

And finally we think the trial court abused the discretion vested in it under Code, 59-2-11, in decreeing that plaintiff pay all the costs of this suit. The discretion of a court of equity in awarding costs is reviewable. *Traugh* v. *Hart*. 113 W. Va. 388, syl., 168 S.E. 137.

For the foregoing reasons we reverse the decree of the circuit court and remand this suit to be dealt with in accordance with the principles herein set forth.

*Reversed and remanded.*