# CHARLESTON.

### BLUBAUGH *v.* LOOMIS *et al.*

### Decided December 21, 1900.

1. FRAUDULENT CONVEYANCE—*Ordeitors Bill—Parties.*
    In a suit brought to have a conveyance of land *held* void as to creditors, and to subject the land to the payment of the debts of such creditors, it is not required or necessary that the creditors, fraudulent grantor or debtor should be convened, and their debts reported. (pp. 687-689).

2. BILL—*Answer—Burden of Proof.*
    Under section 59, chapter 125, Code, the effect of an answer

denying the material allegations of a bill is to put the plaintiff on satisfactory proof of the truth of such allegations.   (p. 689).

Appeal from Circuit Court, Wood County.

Suit by C. B. Blubaugh against George C. Loomis and others. Decree for plaintiff.   Defendant Daniel Gould appeals.

*Affirmed.*

W. N. MILLER, for appellant.

VAN WINKLE & AMBLER and V. B. ARCHER, for appellees.

MCWHORTER, PRESIDENT:

This is a suit to set aside as fraudulent and void as to plaintiff's claim a deed from George C. Loomis and wife to the defendant Daniel Gould, conveying to him certain real estate on Seventh street in the city of Parkersburg, dated October 30, 1894, and to subject the said property to sale for the payment of said claim.   In July, 1892, said Loomis made his note to plaintiff Blubaugh endorsed by C. S. Fewsmith and L. N. Tavenner, for five hundred and twenty dollars for borrowed money.   The note was not paid, but renewed once or twice, the endorsers waiving protest on it when it would fall due.   In November, 1894, a payment of seventy-five dollars was made on the note.   In April, 1897, the note was renewed for the amount then due including interest, amounting to five hundred and thirty-four dollars and eighty-two cents, with said L. N. Tavenner alone as endorser, and when the same fell due on the 23d day of May, 1897, the same not being paid when presented, said Tavenner, the endorser, waived protest thereof in writing.   On the 19th day of October, 1892, Daniel R. Neal conveyed to George C. Loomis in consideration of four thousand dollars of which three thousand dollars was paid in cash, five hundred dollars in five annual notes of one hundred dollars each, with interest, and the possession and use of an office building on said premises reserved by the vendor for five years, which was treated as part of the purchase money at five hundred dollars, the said Seventh street property first mentioned.   After this conveyance to Loomis, he made improvements on said property in the way of building some cheap frame buildings thereon costing about one thousand three hundred dollars.   On the 30th of October, 1894, Loomis

executed the deed to Gould which is sought to be set aside in this cause, conveying the same property in consideration of four thousand dollars. The deed recites that two thousand five hundred dollars of the purchase money was paid in hand, and for the residue Gould, the vendee, assumed the payment of a mortgage thereon of one thousand five hundred dollars executed by said Loomis to the Henry Logan Children's Home, dated November 26, 1892. On June 18, 1896, Daniel Gould, in consideration of one dollar and of love and affection for his daughter Nannie Loomis, wife of said Geo. C. Loomis, conveyed to her certain real estate in Parkersburg, known in this cause as the Green street property, providing in the said deed of conveyance that said property should be treated as an advancement to the vendee as the sum of four thousand five hundred dollars. That afterwards on the 29th of May, 1897, the said Green street property was sold and conveyed to Mary I. Crane for four thousand dollars, of which three thousand five hundred dollars was paid in cash, and five hundred dollars to be paid in one year, for which said Crane made her note. The proceeds of this sale were received by Daniel Gould, the sale being made for his benefit, and he conveying in lieu thereof certain other property on Market street to the said Nannie Loomis to compensate her for the proceeds of said Green street property. Plaintiff filed his bill in the circuit court of Wood County at the July rules, 1897, making George C. Loomis, Daniel Gould, Nannie G. Loomis, L. N. Tavenner and Mary I. Crane parties defendant thereto, setting forth the making of the note for five hundred and twenty dollars of Loomis to Blubaugh, endorsed by Tavenner and renewals thereof, and alleging that said endorser waived protest thereof, that after it fell due on the 21st of January, 1894, the same remained in the bank for collection for plaintiff, that he insisted from time to time that it should be paid and Loomis, the maker from time to time promised and asserted that it would be paid in instalments, and that he on more than one occasion exhibited to plaintiff checks for amounts less than the face of the note, and voluntarily stated that that check held in his hand and exhibited would be left at the bank as a credit upon said note; that plaintiff believed Loomis to be honest in his declaration in that respect, and that he would apply the checks that he exhibited to the discharge of said note and for a time believed that he was so doing; that in November, 1894, a credit of seventy-five dollars was paid on said note, which was

all that was paid on it; that plaintiff by reason of the promises and assertions of said Loomis, which he believed were made in good faith by said Loomis, and confiding in his statements that all of said note except one hundred and twenty-five dollars and interest had been paid, plaintiff did not strenuously urge the payment of the balance of said note, and allowed it to continue in that shape with the said credit of seventy-five dollars until about one month prior to the 20th of April, 1897, when plaintiff insited there should be some settlement of said note. That in response to this, said Loomis executed a renewal of said note payable at thirty days to order of said Tavenner for the sum of five hundred and thirty-four dollars and eighty-two cents, including the accrued interest and to its maturity. Said note was not paid when it came due on May 23, 1897, and protest was waived by said endorser Tavenner. That plaintiff relied on the promises and representations of said Loomis, but was deceived by him, and by his false representations; that after said May 23, 1897, finding him faithless and not fair in his promises, plaintiff made inquiries into his financial conditions and the transactons by him during and from the time plaintiff had loaned him the money, and found that he was the owner of real estate in and about the city of Parkersburg, and was thought to be able financially to meet amount of plaintiff's claim; alleging the conveyance by D. R. Neal to said George C. Loomis, of the Seventh street property when it was entirely vacant, and unimproved, and that about the time of the original loan of the money by plaintiff to said Loomis in 1893, said Loomis graded said real estate and erected thereon some frame tenement buildings, which demanded and produced very good rentals, and an income that made the property much more valuable by reason of such improvements; that after the erection of said buildings said Loomis collected the rents, and still continued to collect the rents from a part of said premises notwithstanding the alleged conveyance to Daniel Gould and appropriating said rents to his personal use. That by deed of October 30, 1894, said Loomis pretended to convey said property to Gould with the improvements thereof for the consideration of four thousand dollars, the same amount Loomis had paid for the bare ground; that such price was wholly inadequate for the property and improvements at the time of such conveyance; that of the consideration of four thousand dollars recited in the deed one thousand five hundred dollars was assumed to be paid

by Gould upon a deed of trust upon said property in favor of Henry Logan Children's Home and two thousand five hundred dollars the residue in cash; that at that time said Gould was largely involved, that he was a borrower of money and did not command ready funds with which to make such purchase; that his debts were more or less pressing him; that he did not in fact at the time nor since pay said two thousand five hundred dollars to said Loomis; that if Gould was liable by reason of any endorsement or liability incurred for said Loomis, he was not legally authorized or permitted to take said property in discharge thereof nor as payment thereon, because of the alleged insolvency of Loomis; alleging that the pretended conveyance by Gould, June 18, 1896, to his daughter, Mrs. Loomis, in consideration of one dollar and of love and affection and providing that she should be charged with the property as an advance went from his estate of four thousand five hundred dollars; that at that time Gould was not in condition financially to make such conveyance, that his debts and liabilities were large, and it would have been unjust to his other three children and also to his creditors to make such gift or advancement; that the real consideration was the prior deed made to Gould by Loomis for the Seventh street property, and in development of an understanding and purpose on the part of said Geo. C. Loomis, Nannie G. Loomis and said Daniel Gould to withdraw the property of said Loomis on Seventh street under the pretense of a purchase upon a consideration which did not exist from the creditors of said Loomis, and to hinder, delay and defraud such creditors; that the delay in making the deed for the Green street property twenty months after the deed from Loomis and wife to Gould for the Seventh street property, was for the purpose and with the view to deceive and defraud creditors into the belief that the transaction of the Seventh street property was a *bona fide* and fair transaction, which it was not, but was for the purpose of hindering, delaying and defrauding the creditors of said Loomis; that before said deed for the Green street property was made by Gould to Nannie Loomis, said Gould notified the tenant in possession of said property that he had given said property to his daughter, and that they should thereafter pay the rents to said Nannie, and that she did from time to time collect the rents and that as early as the year 1895, and long before the said deed of June 18, 1896; that from said facts plaintiff charged that it was the purpose to

make said transfer as of even date, but to separate the deeds in such way as to deceive and mislead the creditors of Loomis and prevent them from suspecting the fraudulent and unconscionable character of the transaction between the said Gould and Loomis, said Gould being the father-in-law of Loomis and the father of Nannie Loomis, and at the time living with them as a member of their family, and that the said three persons concocted and conceived the perpetration of the said fraud; that said Loomis in furtherance of his design and purpose to defeat his creditors had not for some time been transacting business in his own name, and had been screening his transactions in various ways, among them in the name of his wife; that he had purchased property in her name in August, 1895, and September 26th, the next month, had sold it again in her name to one John W. Roberts; that the money used in such transaction and the profits accruing therefrom were entirely that of George C. Loomis, and in line with other transactions which he made in the name of said Nannie G. Loomis, she not being a person of means and being in no business from which she could derive an income and having no capital on which to operate, that all the capital so used was that of said George C. Loomis and the name of his wife was used to prevent the creditors of said George from collecting their debts or reaching his property; that in the fall of 1894 said George C. Loomis on Market street, near Seventh street, Parkersburg, disclosed a purpose to L. N. Tavenner to dispose of his property, both real and personal, and so manipulate it as to conceal it from his creditors, and prevent them from charging their debts upon and against it, which disclosure was made prior to the deed from Loomis to Gould for the Seventh street property, and that the transactions beginning with the transfer of the Seventh street property from Loomis to Gould, and the Green street property from Gould to the wife of Loomis, together with the dealing and transactions in the name of Mrs. Loomis by said George C. Loomis, in the connection with the transactions relative to what will be termed the Market street property was the result of manipulation of said George C. Loomis in conspiracy with said Gould, Loomis' wife Nannie, and others to plaintiff unknown, to withdraw the property of said Loomis away from his creditors and to hinder, delay and defraud them in the collection of their debts; that Daniel Gould was the owner of a piece of property on Market street in said city occupied by W. M. Strauss; that a con-

tract had been drawn up by which it was understood and agreed that when the sale of the property on Green street was made by said Nannie G. Loomis that the amount of money received therefrom was to be paid to said Daniel Gould and in return therefor said Gould was at some future time to convey to said Nannie G. Loomis the said Strauss property on Market street, the purpose being to intermingle and mix the moneys and transactions between these relatives so as to completely and thoroughly, if possible, conceal the fraudulent character of the transactions and eventually to pass the money into the hands of said George C. Loomis or for his use and benefit, through the said Nannie G. Loomis. Alleges that George C. Loomis had made sale of the Green street property to Mary I. Crane by deed dated May 29, 1897, consideration four thousand dollars, the deed reciting that three thousand five hundred dollars of which was paid in cash and five hundred dollars in one year, for which Crane had made her note, which was not negotiable and still owned and held by said Gould, Loomis and wife; that in fact the whole of said three thousand five hundred dollars was not yet paid and besides the said deferred payment of five hundred dollars there was in the hands of Mary I. Crane one thousand dollars, making in all one thousand five hundred dollars in the hands of Crane, who is alleged to be an innocent purchaser without knowledge of the fraud alleged in the bill, that plaintiff cannot reach the property in the hands of the innocent purchaser, but has the right to reach enough of the money in her hands to pay his debt; that relying upon the assurances and representations of said Loomis, plaintiff did not make inquiry or have examination made until within the past month, and that the facts and circumstances alleged were not known to him until within that time, but as soon as he discovered the same he filed his bill. And praying for a recovery against George C. Loomis and the endorser, L. N. Tavenner, that the deed of October 30, 1894, from Loomis to Gould for the Seventh street property be set aside and annulled and the property subjected to sale to pay his debt; that Mary I. Crane be enjoined from paying to Loomis or on his order, or to any alleged assignee of said Loomis the said one thousand dollars so held by her of the purchase money, and also from paying said note of five hundred dollars, or any part of it until the further order of the court, and that George C. Loomis, Nannie G. Loomis and Daniel Gould be enjoined from negotiating, disposing of or

transferring said five hundred dollar note of Mary I. Crane and for general relief. Plaintiff also sued out an attachment and caused the same to be levied upon the Seventh street property, and also designated the defendant Mary I. Crane as being indebted to or having in her possession the effects of the defendants, which suggestion was duly served on said Mary I. Crane.

The judge of the circuit court being a party defendant to the bill, Smith D. Turner, Esq., was duly elected special judge to · hear and determine this cause. September 1, 1897, the defendant Daniel Gould tendered his demurrer to plaintiff's bill which on his motion was set down for argument. Said defendant also tendered his answer, which was filed and to which general replication was entered. On the 2d of September the demurrer being argued was overruled, said defendant then moved the court to require plaintiff to elect which of the two properties mentioned in the bill he proposed to pursue for his alleged debt, viz: the Seventh street property or the funds in the hands of defendant Crane, and if the latter, to require plaintiff to enter a release of all said funds in the hands of said Crane except enough to cover the plaintiff's debt, and on motion of defendant said motion was set down for argument. The answer of Gould denies all material allegations of the bill, denies all fraud and avers that all the transactions complained of as fraudulent between Loomis and his wife and himself, were fair and honest, *bona fide* and in no way tainted with fraud and denies his insolvency at the time of said transactions and each of them, and denies all charges and intimations of fraud and collusion between him and said Loomis in relation to any of the transactions mentioned in the bill; avers that the Seventh street property which he purchased from George C. Loomis has not netted him an income of exceeding six per cent. on valuation of four thousand dollars; that when Loomis first asked him to purchase it he declined to buy it, but finally when said Loomis failed to make sale of the property to others at any price, and respondent says that he reported to him that he had tried to get four thousand five hundred dollars for it and failed, respondent in order to aid said Loomis agreed to buy the property at four thousand dollars, and did in good faith do so, and had fully paid therefor, and at the time of the purchase he had no knowledge whatever of plaintiff's claim; that in answer to the insinuations in the bill that he did not pay the two thousand five hundred dollars cash balance recited in the

deed for the Seventh street property, says that he gave Loomis his note for one thousand six hundred dollars, and attached thereto as collateral a contract for the payment of money with A. K. Leonard, which note was discounted by Loomis, the proceeds placed to his credit in the First National Bank of Parkersburg and after renewing once or twice was paid by respondent, out of his own individual funds and money; that the balance of two thousand five hundred dollars was made up of six hundred dollars cash paid said Loomis and which was placed to his credit in said bank about November 9, 1895, and the residue was made up of a note of Mrs. M. A. Jones, which he assigned to Loomis. Defendant George C. Loomis tendered his demurrer and answer, which were filed, the demurrer was overruled, and general replication to the answer. Defendant denies that he borrowed the five hundred and twenty dollars from plaintiff July 24, 1893, as alleged, but that he borrowed it July 18, 1892, admits promises to pay said note, but never fixed any time except by the renewals thereof from time to time with consent of plaintiff and endorser, but because of financial reverses had been unable to pay it. Denies that he ever stated to plaintiff that the note was all paid except one hundred and twenty-five dollars; denies making to plaintiff false statements and misrepresentations; admits that he purchased the Seventh street property as alleged, but thought at the time he was paying a large price for it, and has since been thoroughly convinced of it, and would not have paid the price at the time, but that he owned adjoining property fronting on Market street, and was then negotiating with parties to add to his Market street property, and turn it into a hotel, but failing in that he was left with this unproductive property on his hands until he put the tenement house thereon; avers that he actually conveyed the Seventh street property to Gould openly, for the consideration of four thousand dollars, of which two thousand five hundred dollars was paid respondent by the note of Gould for one thousand six hundred dollars, which was discounted and proceeds went to credit of respondent, six hundred dollars in cash, and note of Mrs. M. A. Jones assigned to him for the balance of the two thousand five hundred dollars, which went to credit of respondent and used by him to a great extent in the business of establishing the planing mill of Loomis & Young, and the residue in paying debts and obligations of respondent; denies the inadequacy of price of

the property sold to Gould; that before selling to Gould he made vigorous efforts to make sale to other persons, offered it at various prices, first holding it at five thousand dollars, and dropping from time to time to four thousand five hundred dollars, and tried hard to get that price but failing in that he prevailed on Gould who was reluctant to do so, to take it at four thousand dollars; that said transaction was open and notorious and done in good faith and for no other purpose than that stated; denies that the conveyance by Gould to respondent's wife of the Green street property had any connection whatever with the conveyance of the Seventh street property to Gould, and denies all allegations of fraud and collusion charged to hinder and delay his creditors; admits that it might be true that for a short time before he actually made the deed to Mrs. Loomis, but after he proposed to give her the property Mr. Gould allowed her to collect the rents for the other children of Mr. Gould were already in possession of the property given them and enjoying the use and benefit of it, and it was deemed fair and just that she should have the rents from the property set apart to her, and that so far as respondent knows any notices given were given as between landlord and tenant, and not for the purpose of deception; denies that he had any interest whatever in the Green street property, which Mrs. Loomis sold to Mrs. Crane for her father's accommodation and at his request to aid him in some of his financial matters, and the conveyance of the Market street property to Mrs. Loomis in exchange therefor; denies that plaintiff failed to make inquiry respecting respondent's affairs because of his assurances and representations, and avers that he had frequent talks with plaintiff about his affairs and charges that plaintiff had full knowledge thereof, that his affairs were the subject of newspaper advertisements by way of notices to creditors and of sale, and it could hardly be possible that those matters wholly escaped plaintiff's notice, that certainly they did not escape the notice of defendant L. N. Tavenner, then a practicing attorney in the court where all the legal proceedings occurred; denies that he disclosed to Tavenner a purpose to dispose of his property both real and personal, and so manipulate it as to conceal it from his creditors; and denies that he has done anything in furtherance of the alleged design to defraud by attempting to do business in his wife's name.

On the 4th of September, 1897, the cause came on to be heard

on the motions of the defendants except George C. Loomis, and L. N. Tavenner, to quash the order of attachment based on the affidavit for attachment and also to quash the return of the officer on the attachment and the order of attachment and return thereon summoning the defendant Mary I. Crane as garnishee, and the renewal of the motion to require plaintiff to elect the property or fund he will pursue, and the same defendants tendered their plea in abatement to the attachment to the filing of which plaintiff objected. The court overruled the motion to require an election by plaintiff and the other motions were held under advisement by the court. On the 8th of September, 1897, the defendant Mary I. Crane tendered and filed her demurrer to plaintiff's bill, which being considered was overruled, and the defendant required to file her answer within thirty days. Depositions were taken and filed in the cause on behalf of the plaintiff, and of the defendants. On the 28th of March, 1899, defendant Tavenner tendered his answer to the filing of which defendant Gould objected, and the said defendant Gould tendered his supplemental answer to the filing of which plaintiff objected, and the cause was submitted on said objections for final decree. The answer of defendant Tavenner admits the making of the note, and the renewals thereof, and avers that when the note was first made he believed said Loomis was solvent and that the note would be paid when due; that it is true as alleged in the bill that Loomis acquired the Seventh street property in consideration of four thousand dollars from D. R. Neal; that it was worth the full amount of the consideration and is still worth it at the institution of this suit, and that respondent would bid and pay for said property without the improvements put on by Loomis said sum of four thousand dollars, and offers for the property with the improvements five thousand dollars, as a bid for the same in its present condition as an opening bid should the same be sold under a decree of clearing the title from all taint of fraud; averring that the consideration for the conveyance of said lot by Loomis to Gould was inadequate, and that the money expended by Loomis on the improvements was ignored and that the conveyance to the extent of the value of said improvements was a fraudulent conversion of the assets of Loomis to his father-in-law whereby he withdrew nearly or quite three times the amount of his obligation to plaintiff, which respondent alleges in view of the insolvent condition of said George C. Loomis was

fraudulent *per se;* that said Gould was himself involved in debt and was not financially in a condition to advance and pay two thousand five hundred dollars alleged to have been paid to Loomis for said property in addition to assuming the said trust debt of one thousand five hundred dollars and was not in such financial condition as to warrant such purchase. Alleges that Loomis was at the time of the transfer of said Seventh street property to Gould insolvent, that his debts amounted to a sum much in excess of the value of all his property; that Gould was not in a financial condition to warrant him in making a gift of four thousand five hundred dollars to his daughter, Mrs. Loomis, that at that time he was largely indebted and a borrower of money to a very great extent and endorser on paper carried by the banks in the city of Parkersburg; alleging that the conveyance of the Seventh street property to Gould and the conveyance or the Green street property by Gould to his daughter was one and the same transaction concocted by and between Loomis and Gould for the purpose of withdrawing the estate of said Loomis in this roundabout way from his creditors and placing the title of said Green street property in the name of the wife of Loomis for the express and for the wilful and fraudulent purpose of hindering, delaying and defrauding Loomis' creditors; alleging the disclosure to him by Loomis as charged in the bill his purpose to dispose of his property both real and personal and so manipulate it as to conceal it from his creditors, which disclosure was a few days before the date of the deed for the Seventh street property from Loomis to Gould. Respondent alleges that he believes the transactions mentioned in his answer between Loomis and Gould to have been a scheme to defraud the creditors of Loomis, and that said Seventh street property should be held liable for plaintiff's debt in which liability attaches against respondent; and again avers that the property sold at an inadequate price from Loomis to Gould and that respondent will bid five thousand dollars for the property and give bond with sufficient security to guarantee that such bid will be made. The supplemental answer of Gould refers to the said answer of defendant Tavenner, who he alleges is the real plaintiff, although sued as a defendant; that he does not understand what purpose Tavenner can have in proposing to offer five thousand dollars for the property on the conditions named by him, except it be that it is presumed by him such an offer will have some influence with

the court in determining the issue involved in the case; that said answer was prepared and filed and lodged in the papers of the cause since the testimony taken on behalf of Gould had been filed in the cause showing that after long effort, and urged thereto by respondent's present need and necessity, had made a sale of said property and had delivered the papers in escrow awaiting the determination of this suit to relieve his title of the unjust charge of fraud, and it is now well known that said Tavenner is perfectly safe in making such proposition, that said proposition has been made by him; avers that shortly after this suit was instituted, when the charge of inadequacy of price was made at the instance of Tavenner, he proposed to Tavenner to sell him the property with the improvements at the price of four thousand two hundred and fifty dollars, which proposition Tavenner would not accept and refused to consider; that before making the recent sale he would have been glad to have parted with the said property to said Tavenner at five thousand dollars, for he says the debt for which he held the deed of trust as security for his endorsement, as shown in this cause, remains wholly unpaid, and he would have been more than willing to have accepted such an offer, an offer which he has been seeking for many months. The bill and all the answers filed are duly verified. And on the 24th day of April, 1899, the case was heard and the objections to the said answer of Tavenner and supplemental answer of Gould were overruled, said answers filed and general replication to each of said answers by plaintiff. It was decreed that plaintiff recover of defendant Geo. C. Loomis the sum of five hundred and ninety-six dollars and fifty cents, the amount of the note including interest and to bear interest from April 24, 1899, till paid, and costs of suit. And it was further decreed that the deed of October 30, 1894, from George C. Loomis and Nannie G. Loomis, his wife, to Daniel Gould for the Seventh street property be set aside and held invalid and annulled as to the debt, interest and costs decreed to plaintiff, and providing that unless said Loomis or Gould or some one for them should pay said decree within sixty days from the date of the entering of said decree, that said Seventh street property should be sold subject to the deed of trust to the Henry Logan Children's Home made by said Loomis, to satisfy said decree of plaintiffs. From this decree defendant Daniel Gould appealed, insisting that it was error to overrule his demurrer to

the bill. It is claimed that the bill shows on its face the out-standing title in the trustee of the Henry Logan Children's Home, and that the home as well as the trustee in the deed of trust securing this debt to the said Children's Home were neces-sary parties. This is a bill for the purpose of setting aside as fraudulent a deed from George C. Loomis to Daniel Gould, and to subject the property conveyed as Gould's property to the pay-ment of plaintiff's claim. *Core* v. *Cunningham,* 27 W. Va. 206, (syl. pt. 5), it is held, "In a suit brought to have a conveyance of land declared void as to creditors, and to subject the land to the payment of the debts of such creditors it is not required by the statute or the general law on the subject, that all the cred-itors of the fraudulent grantor or debtor should be convened and their debts reported, nor that it should be ascertained whether the rents will pay off the debts in five years, before there can be a decree for the sale of such land." JUDGE SNYDER in the opin-ion of the Court in that case said: "The land should be re-garded and sold as hers and not as the property of her husband. In cases of this character therefore, it is not proper to convene the husband's creditors, nor to rent the land." It is true in case at bar defendant Gould had assumed the payment of the debt due to the Children's Home, which was a trust lien upon said property. While it would not have been error to make the home and the trustee parties to the suit they were not necessary par-ties. *State* v. *Bower,* 38 W. Va. 91. It is claimed by appellant that the court erred in not quashing the order of attachment based on the affidavit therefor, and contends that the attachment was void and should have been quashed for the reason that all the material facts alleged in the affidavit are stated upon infor-mation and belief; that all the facts recited in the affidavit in regard to the conveyance referred to do not constitute fraud under the decisions of this Court, that they are all consistent with honesty and fair dealing. The grounds for the attachment as stated in the affidavit are under the 5th, 6th and 7th clauses of section 1, chapter 106, Code. The material facts stated in the affidavit are that on or about October, 1894, and prior thereto and as early as October, 1892. George C. Loomis was the owner in fee of certain real estate in the city of Parkersburg on Sev-enth street, purchased from and conveyed to him by D. R. Neal in October, 1892, for consideration of four thousand dollars, which property was then vacant except a small building not

appurtenant thereto, was in fact unimproved; that thereafter Loomis borrowed from plaintiff in July, 1893, five hundred and twenty dollars, and gave his note therefor endorsed by L. N. Tavenner and C. S. Fewsmith as accommodation endorsers, and of which note that now held by plaintiff is a renewal, and after said money was borrowed from plaintiff, Loomis improved the real estate by erecting a residence building thereon, adding largely to the value thereof. Affiant believed it enhanced the cost thereof as recited in said deed as much as three thousand dollars, and after so improving it and in October, 1895, for a pretended consideration of four thousand dollars, the identical sum paid for the bare land and without adding cost of buildings the said Loomis made a pretended sale of said real estate to his then and now father-in-law, Daniel Gould, and at the time said Gould was living in and a member of the family of said Loomis, that outside of the assumption of a one thousand five hundred dollar lien to Henry Logan Children's Home as set forth in the deed (affiant was informed and believed) that the sum of two thousand five hundred dollars, recited therein as paid by said Gould to said Loomis was not in fact then paid nor did affiant believe said sum had ever been paid by said Gould to Loomis, or has ever been paid at all, and if said Children's Home debt had been paid in whole or in part the same had not been paid by said Gould but by Loomis, and plaintiff believed from such information that it was so understood between Gould and Loomis at the time of the transaction, and said deed was made and recorded with intent on their part to hinder, delay and defraud the creditors of Loomis. Affidavit states that Gould was not in control of funds to carry on such a transaction as he was then and now very much in debt, and was then and is a large borrower of money, and largely indebted directly and indirectly, while Loomis was insolvent at the time of such sale and since, and because of his liabilities as a member of the firm of Loomis & Young he had determined to transfer his property and conceal it from his creditors, that about that time or shortly before such conveyance to Gould said Loomis disclosed his purpose to withdraw his property from his creditors and affiant believed Gould was a party to such purpose of Loomis and said transaction was made in pursuance of such disclosure and purpose, well known to both Loomis and Gould and both combined in that act and other acts to hinder, delay and defraud the creditors of said

Loomis. If this is true, that Loomis did make such disclosure and that in pursuance thereof the deed of conveyance was made by him to Gould, and they were acting together with the same purpose and interest, this would be good grounds for attachment. Affiant further states that in June, 1896, said Gould pretended to convey to his daughter Mrs. Loomis, wife of said Loomis, certain property on Green street in consideration recited in the deed of one dollar, and love and affection and which was to be an advancement to her at his value of four thousand five hundred dollars; that said Gould was not financially in condition to make such a gift, that it would be unjust to his other children as well as to his creditors compared to Gould's other estate less his liabilities; that said conveyance was not *bona fide,* but a part of the purpose and method adopted and designed to carry out the transfer of the property of said George C. Loomis, and for the purpose of hindering, delaying and defrauding the creditors of Loomis; that said Loomis personally collects rents from both properties and had controled and managed the same as if the same were his own and thus has continued in possession thereof; that prior to June, 1896, and as early as 1894, and since said Loomis had assumed control and possession of the property on Green street, and in the spring of 1896, before the deed was made as appeared from the date thereof from said Gould to his daughter Nannie Loomis, said George C. Loomis made sale of said property to ———— Arndt, alleging that his wife was the owner of it, that it was given to him by said Gould her father, while in fact such transfer was made in conspiracy with said George C. Loomis to defeat the latter's creditors, and such sale was not consummated because possession could not be given of the property against the occupying tenant's rights; that before said deed was made in 1896 from said Gould to said Loomis, said Loomis exercised acts of ownership over the said property, claimed to have possession thereof, and said Gould had informed his tenants that they should pay rents to said George C. Loomis to whose wife he had given the property; that the circumstances make it clear to the mind of affiant that the transfers of the two properties were in fact made on the same date, and the actual date of the deed for the Green street property to said Nannie G. Loomis was withheld and dated long after, the better to deceive and carry out the purpose of said Loomis and said Gould in the premises; that the said statements were made from information which had

come to him within the last month and where the said Loomis had failed to keep his many promises and had deceived him in promising to put money to the credit of his note in the bank where it was, and failing to carry out such promises after exhibiting checks to affiant which he said was to be applied to the note and which were never so applied, his suspicions were aroused and he made inquiries and caused the records to be examined and ascertained said facts, and says there is and was a conspiracy between said Gould and Loomis and others to affiant unknown to make away with the property of said Loomis to cover and conceal the same, and to hinder and delay and defraud the creditors of said Loomis.

The requirements of an affidavit as to the material facts to be set out to be sufficient grounds for an attachment are very fully discussed by JUDGE SNYDER in the case of *Delaplain* v. *Armstrong*, 21 W. Va. 211. The defendants Daniel Gould and George C. Loomis having filed their several answers denying under oath all the material allegations of the bill, denying all fraud or fraudulent intent and said Gould having further denied any and all knowledge or notice of fraud or fraudulent intent, has the plaintiff sufficiently proved fraud? and especially notice and knowledge of fraud in the defendant Daniel Gould? Loomis bought the Seventh street property from D. R. Neal in October, 1892, at the price of four thousand dollars. He made some improvements, grading and building a cheap tenement house upon it in 1894, needing some money both to meet debts and to put into the firm business of Loomis and Young, he tried to sell this Seventh street property. He went to Mr. Gould, his father-in-law, wanting him to buy it. Gould at first refused, and told him to sell it to some one else. Loomis states that he tried to get five thousand dollars for it and fell in price from time to time until he got the price down to four thousand five hundred dollars, and failing to get that price, again applied to Gould who purchased it at four thousand dollars. Plaintiff alleges in his bill that this is a very inadequate price. "Mere proof of inadequacy of price by itself has been considered insufficient to implicate the vendee in the fraudulent intent, and inadequacy of price, unless extremely gross, does not *per se* prove fraud. It must appear that the price was so manifestly inadequate as to shock the moral sense, and create at once upon its being men-

tioned a suspicion of fraud." *Beirne* v. *Ray,* 37 W. Va. 571; *Douglass* v. *Douglass,* 41 W. Va. 13; *Wood* v. *Harmison, Id.* 376; *Lallance* v. *Fisher,* 29 W. Va. 512. Depositions were taken as to the value of said Seventh street property in 1894, the date of the purchase by Gould from Loomis. V. A. Dunbar, occupation real estate agent and civil engineer, in real estate business nearly sixteen years, except when he had some engineering work, was engaged some time trying to make sale of the Seventh street property, and, did finally sell the two frame houses; "I don't think it was worth over four thousand dollars in 1894, taking the whole property together. The frame houses are not well built. The principal value consists in the ground." On cross-examination when asked, "On what do you base your statement that this property in 1894 was worth but four thousand dollars?" answered, "Four thousand four hundred dollars was all I could get for it in 1898, since from my handling real estate all over the city, I think there has been an increase of four hundred dollars in such property in the four years." R. B. Taylor testified he came to Parkersburg in 1848, had been connected with Traders' Building Association eighteen years, owned property in the city, says: "I always value property for what it would bring. In my opinion it was worth in 1894 about three thousand five hundred dollars." C. D. Dotson said he was thinking of investing some in real estate when Mr. Gould offered him this property on Seventh street including the frame and brick buildings for four thousand dollars.

W. F. Nolan, connected several years with Traders' Building Association, had been on committee to value real estate for loans, knew the Seventh street property. In his opinion it was worth in 1894, subject to the life lease of D. R. Neal on the brick office, anywhere from three thousand dollars to three thousand five hundred dollars. E. L. Davidson owns property corner Market and Eighth streets, knew the Seventh street property, "should say it was worth four thousand dollars" in 1894, and subject to the lease on the brick office would make it three thousand five hundred dollars instead of four thousand dollars. E. L. Davidson owned real estate in city of Parkersburg, had but little experience, but a great deal of observation about buying and selling real estate, knew the property in question in 1894. "I should say it was worth four thousand dollars." W. N. Chancellor had lived in Parkersburg over fifty years, had bought

and sold real estate extensively during that time, knew the property. When asked, "What in your opinion, was that property worth in October, 1894, subject to a reservation on the office building of five years from 1892?" answered, "Well, I think four thousand dollars would be a fair price for it as an investment, as nobody would want to buy it as a whole for any other purpose." J. H. Fisher, connected with Homestead Building Association, since 1874, treasurer and director, owns real estate, dealt some in real estate for last ten or fifteen years, not very extensively, knows the property in question, puts the value in 1894, subject to the lease of D. N. Neal at two thousand five hundred dollars to three thousand dollars. W. H. Smith, lived in Parkersburg thirty years, has made several purchases and some sales of real estate, and has been acquainted with values for twenty years, knows the property in question, and thinks three thousand five hundred dollars would be a fair valuation in 1894 subject to the reservation of the use of brick office building for five years from 1892. While on the other hand George W. Gordon, a witness for plaintiff, is real estate dealer, tries to keep posted on value of real estate in the city, says, "In 1892 my opinion is the ground before the buildings were on there was worth forty dollars a front foot on Seventh street. In 1894 the ground was worth fifty dollars a front foot, which makes a total of three thousand eight hundred and fifty dollars, and the buildings worth one thousand five hundred dollars, makes a total of five thousand three hundred and fifty dollars. In 1898 the ground is worth fifty-five dollars a foot, which makes a total of four thousand three hundred and thirty-five dollars, and the buildings at the same price, makes a total of five thousand seven hundred and thirty-five dollars." J. M. Mitchell, real estate and insurance, about five years acquainted with values by selling and handling property in the city, the ground in 1894 was worth forty dollars a front foot naked, and to-day (1898) it would be worth fifty dollars a foot naked. The property with improvements now worth at least five thousand five hundred dollars, didn't know of any sales in that vicinity in 1894. Wasn't much property moving then. It has got so now it moves off; hard work to find such a piece of property near the business portion of the city. That makes the value of property." J. M. Circle put it at five thousand dollars in 1894 with the improvements. Geo. C. Loomis had tried to sell to other parties the property at four

thousand five hundred dollars and was unable to do so. The witnesses differ very widely as to the value of the property, estimating all the way from two thousand five hundred dollars, the lowest figures, to five thousand seven hundred and thirty-five, dollars, the highest. As in *Douglass* v. *Douglass,* 41 W. Va. 13, JUDGE DENT in writing the opinion of the Court, at page 18 says: "Numerous witnesses widely differing in their notions, testify on the subject, estimating the value of the property all the way from seven hundred dollars and up to one thousand five hundred dollars. Nearly if not all are unquestioned as to the real matter in dispute. They are asked simply as to the abstract value of the property. When the question should have been as to its fair cash value." I am of opinion gathered from all the evidence touching the question that four thousand dollars was about a fair price for it, and about as much as it could have been sold for at the time, October, 1894. If Loomis had paid too much for it two years before, that was his misfortune.

Mr. Gould underpinned and painted the house, putting on it about one hundred and fifty dollars improvement, and was trying to sell it at four thousand dollars, offered it to witness Dotson at that price, and was offering it at four thousand two hundred dollars in 1898. He testifies that he had made efforts to sell the property, had had it in the hands of an agent, that he had endeavored to get the best offer for it and the highest price he had offered was a little over four thousand one hundred dollars. Whatever may have been the intent of George C. Loomis in relation to putting his property beyond the reach of his creditors, and there is some evidence tending to show that he had some design of that sort. And yet it seems that he used none of the consideration for his personal benefit, except to pay on his debts, and to build up the business of Loomis and Young, and if Loomis had such fraudulent purpose and intent, has it been shown that Mr. Gould had knowledge of such thing? It is alleged that Gould was not in such financial circumstances as to enable him to have made the purchase, making a down payment of two thousand five hundred dollars, or to have given his daughter property of the value of four thousand five hundred dollars, that such dealings would not be fair to his other three children, or to his creditors. It is shown that he had already provided for his other three children, and that he had provided them with property of about an equal amount, and it nowhere

appears that his creditors were even injured or complained. And Gould says he always had more property than was sufficient to pay his debts. In his brief appellant refers to Gould's statement as to the property he had at the time he purchased the Seventh street property in 1894, when he says, "I think I had about eight thousand dollars worth of property." This must be a mistake in the record, for he goes on in the same statement to specify, "I had the Sixth street property worth about three thousand dollars, a piece outside the city which has since been sold for a little over nine thousand dollars, and the Green street property about five thousand dollars," and further on he mentions interest of one thousand four hundred dollars in Parkersburg Hardware Company, worth about seventy cents on the dollar, and the building in which the company conducted their business, owned by him, which he valued at five thousand dollars, but which he says he since sold for six thousand dollars. As far as his financial ability is concerned, it is shown that Gould was able at the time to purchase the Seventh street property and also give his daughter, Mrs. Loomis, the Green street property. It is insisted that Gould did not pay the two thousand five hundred dollars recited in the deed of October 30, 1894, to be paid in hand, and the receipt of which was acknowledged. Gould solemnly swears that it was paid, and tells how, by a note of one thousand six hundred dollars, which was discounted in the bank by said George C. Loomis, six hundred in money and Mrs. M. A. Jones' note for three hundred and fifty-eight dollars and fifty-six cents. Gould states that the one thousand six hundred dollar note was afterwards paid by him with his own money that he got from Leonard for the property he sold him on Sixth street. George C. Loomis also testifies that Gould paid him in the manner stated by Gould, and shows by his bank account, which is filed with his deposition, that the note for one thousand six hundred dollars was discounted by the bank and the proceeds, one thousand five hundred and sixty dollars and forty-eight cents, placed to the credit of said Loomis' account in the bank on the 1st day of November, 1894, and says that Gould did not pay the six hundred dollars for several days, as he recollects, after the deed was made, and said six hundred dollars was placed to the credit of his account in the bank on the 9th day of November, 1894, that the note of Mrs. Jones given him by Gould was used by him (Loomis) as collateral on a note of his own for two hundred and

fifty dollars which he had discounted at the First National Bank some time after the transaction. His note was finally paid, and he subsequently discounted the Jones note also direct to the bank, and presumed that it had been paid, as he had heard nothing from it. And also exhibited checks for a large part of said money which he put into the business of Young & Loomis. The only circumstance in the cause which is beset at all with difficulty is the relationship existing between the defendants Gould, Loomis and his wife Nannie G. Loomis. Gould had the right to purchase from Loomis in the absence of notice of fraudulent intent on the part of Loomis. Whatever Gould may have known of the indebtedness of Loomis, it will hardly be contended that he knew anything about plaintiff's claim or the note here sued on. Admit that Loomis had the conversation with defendant Tavenner, as stated by the latter, unless notice of the purpose and intent of Loomis is brought home to Gould, he was in no way bound or affected by it. Gould swears most solemnly both in his answer and deposition that he had no notice of such fraudulent purpose or intent. Appellee cites *Sturm* v. *Chalfant*, 38 W. Va. 248, syl. 3, as conclusive in this case, and contends that the facts and circumstances are of such a character as to lead a reasonable man to the conclusion that the conveyance was made with the intent to hinder, delay, etc., then recites the actions of Loomis in making the debt, in deceiving plaintiff, and lulling Tavenner into the belief that the debt had been paid, which are all improper acts on the part of Loomis and go to show the fraudulent intent on his part, but not binding on the grantee Gould. Then the making of the pretended deed conveying valuable property at an inadequate price, and as is shown on the face of the deed, two thousand five hundred dollars of the four thousand dollars of this consideration which is alleged to be absolutely and utterly false, as no such payment was made. We have seen that the facts of this payment were supported by proofs. The evidence as to the payment of one thousand six hundred dollars and the note of Mrs. M. A. Jones is beyond question, and the evidence of both Gould and Loomis as to the payment of six hundred dollars, the residue, is corroborated by the bank account of Loomis. And as to the rents on the Green street property being paid to Loomis is entirely immaterial unless the conveyance of that property to Mrs. Loomis was the actual consideration for the Seventh street property, and whenever the payment

of the two thousand five hundred dollars by Gould to Loomis and the assumption of the one thousand five hundred dollars to the Logan's Children's Home, is shown satisfactorily, the theory of plaintiff that the conveyance of the Green street property was the real consideration for the Seventh street property is dispelled. Appellee also cites and relies upon *Butler* v. *Thompson,* 45 W. Va. 660 (31 S. E. R. 960), where it is held "that in a suit of this kind the recitals of the deed that the grantee had paid the grantor a valuable consideration are not evidence against the creditor of such payment, and the burden of proving that a valuable consideration was paid is upon the grantee." But it is there further held that the burden of proving the deed fraudulent in fact is upon the creditor. *Cohn* v. *Ward,* 32 W. Va. 34, syl. 2. Section 1, chapter 74, code, after providing that "Every gift, conveyance * * * * given with intent to delay, hinder or defraud creditors, purchasers, or other persons, of or from what they can or may be lawfully entitled to, shall as to such creditors, purchasers, or other persons, their representatives or assigns, be void," further provides, "This section shall not affect the title of a purchase for valuable consideration, unless it appears that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor." In *Goshorn* v. *Snodgrass* 17 W. Va. 717, syl. 8, it is held, "Under our statute of frauds, as well as the English statute of 13 Elizabeth, a *bona fide* purchaser for value having no notice of covin, fraud, collusion, etc., will be protected. To vitiate a conveyance there must be a fraudulent design in the grantor, and notice of that design in the grantee." *Wood* v. *Harmison,* 41 W. Va. 386. In *Herring* v. *Wickham,* 29 Grat. 628, syl 1, holds that, "If the grantee in a deed be a *bona fide* purchaser for a valuable consideration, his or her title is unassailable, whatever may have been the motives or intentions of the grantor in executing the deed. It is absolutely essential that both parties shall concur in the fraud to invalidate the deed," and *Harden* v. *Wagner,* 22 W. Va. 356, syl 9, "The *onus probandi* is on him who alleges fraud, and if the fraud is not strictly and clearly proven as it is alleged relief cannot be granted, although the party against whom relief is sought may not have been perfectly clear in his dealings." *Bailey* v. *Armstrong,* 43 W. Va. 778. In *Batchelder* v. *White,* 80 Va. 103, syl. 4, holds, "It is not enough that the purpose of the grantor be

fraudulent. Knowledge of such purpose must be clearly brought home to the alienee. Where the latter has denied such knowledge on oath, it cannot be held that his denial is overthrown by mere circumstances of suspicion adduced against him." *Shurtz* v. *Johnson,* 28 Grat. 657; *Miller* v. *Fraley,* 23 Ark. 735. It. is held in *Saunders* v. *James,* 85 Va. 936, that "Where to bill calling for discovery and alleging fraud, there is a responsive answer positively denying the allegations and they are unsustained by evidence at the hearing, the bill must of course be dismissed with costs." *Hickman* v. *Trout,* 83 Va. 478. Under section 59, chapter 125, Code, the effect of an answer denying the material allegations of a bill is to put the plaintiff on satisfactory proof of the truth of such allegations. *Jarrett* v. *Jarrett,* 11 W. Va. 584; *Bronson* v. *Vaughn,* 44 W. Va. 406. Plaintiff having failed to sustain the allegations of his bill I think the decree should be reduced and the bill dismissed.

My associates, however, are of the opinion that the circumstances of the parties, the known and continued financial distress of the defendant George C. Loomis, the relationship existing between the defendants Gould, the father, Mrs. Nannie G. Loomis, the daughter of Gould, and George C. Loomis, the husband of Nannie and son-in-law of Gould, all living together in the same house as one family, raise a presumption of the certain knowledge of said Gould of the fraudulent intent of the defendant George C. Loomis to get his property out of the reach of his creditos, that can be overcome only by clear and convincing proof, which, coupled with the further fact of the positive recital in the deed of October 30, 1894, of the·payment on the purchase money of two thousand five hundred dollars, in cash, when it is not only proved but admitted that it was not all paid at the time, and the proof is not considered sufficiently clear as to the certain payment of all the said two thousand five hundred dollars, even afterwards, and being a case of doubt, in their view, the circuit court should not be overruled. They are therefore of the opinion that the decree should be affirmed.

*Affirmed.*