# CHARLESTON.

## BUTLER *v.* THOMPSON.

### Submitted Sept. 15, 1898—Decided Dec. 14, 1898.

1. FRAUDULENT CONVEYANCE—*Evidence—Burden of Proof.*

    Where a suit is brought by a creditor assailing a transfer of property by his debtor as fraudulent and made with intent to hinder, delay, and defraud him in the collection of his debt, the proof of fraud rests on the party who alleges it, but circumstances may exist which will shift the burden of proof from the party impeaching the transaction onto the party upholding it. (p. 667).

2. FRAUDULENT CONVEYANCE—*Suit Pending.*

    A conveyance made by a party of his entire property during the pendency of a suit brought to recover judgment against him on a debt is a badge of fraud. (p. 668).

3. FRAUDULENT CONVEYANCE—*Deed—Consideration—Evidence—Burden of Proof.*

    Where the creditor of a grantor assails in a chancery suit a deed made by a grantor as voluntary and fraudulent, the recitals of the deed that the grantee had paid the grantor a valuable consideration are not evidence against the creditor of such payment, and the burden of proving that a valuable consideration was paid by the grantee to the grantor is upon the grantee, but the burden of proving that the deed was fraudulent in fact is upon the creditor. (p. 666).

4. FRAUDULENT CONVEYANCE—*Deed—Consideration—Burden of Proof.*

    Where a creditor files a bill to set aside as fraudulent a deed executed by his debtor which recites the payment of a valuable consideration, and such creditor's debts are older than the deed, the burden is on the grantee to prove the payment of the purchase money, or, if the deed was executed for the payment of existing debts, to prove the validity of such debts. (p. 667).

5. FRAUDULENT CONVEYANCE—*Family Relations.*

    Where a conveyance of property by an uncle to his nephew is assailed as fraudulent as to creditors, the parties are held to a fuller and stricter proof of the consideration and of the fairness of the transaction than if the conveyance was between strangers. (p. 668).

    Appeal from Circuit Court, Tucker County.

    Bill by J. P. Butler against J. F. Thompson to set aside a fraudulent conveyance from a decree dismissing the bill, complainant appeals.

*Reversed.*

    W. B. MAXWELL and C. O. STRIEBY, for appellant.

    DAYTON & DAYTON and FRED O. BLUE, for appellee.

ENGLISH, JUDGE:

    On the 27th day of December, 1892, J. P. Butler obtained a judgment against John F. Thompson for the sum of four hundred and ten dollars and sixty cents, before a justice of the peace of Tucker County, on which an execution was issued and placed in the hands of a constable, and returned by him, "Money not made, and no property found." Said Butler thereupon filed his bill in the circuit court of said county, alleging therein that at the time he brought his suit before the justice said Thompson owned a very valuable shingle and board mill worth about one thousand and five hundred dollars situated in said county, and also owned another saw mill worth about one thousand dollars situated in the town of Davis, and other valuable personal property, such as saw logs, shingles, boards, lath, and other lumber, and lumbermen's tools, of the probable value of two thousand dollars; and, in addition to said property. Thompson and his wife were joint owners of a valuable house and lot in the said town of Davis, known as lot No. 305 on the plat of said town; that, during the pendency of said suit before the justice, Thompson, on the 15th of December, 1892, pretends to have sold the whole of said property to his nephew Frank E. Thompson, receiving six hundred dollars cash for said house and lot in Davis; that he is not informed what said F. E. Thompson claims to have paid for said personal property, but that he now claims

the whole thereof by the terms of his purchase; that the pretended transfer of said property, which was intended to cover all the property both real and personal owned by said John F. Thompson, was made for the purpose of hindering, delaying, and defrauding the creditors of of said J. F. Thompson, and especially for the purpose of defrauding the plaintiff, and that said Frank E. Thompson had full notice and knowledge of his fraudulent intent and assisted and participated therein, and is now endeavoring to assist in the consummation of said fraudulent intent, and is endeavoring to prevent the plaintiff from recovering the amount of his 'said judgment; that J. F. Thompson and his family yet have possession of the house, and occupy the same, which was conveyed to F. E. Thompson as aforesaid; that said J. F. Thompson still manages and controls as his own the mills and personal property transferred by him to F. E. Thompson, and, so far as any visible sign of change of ownership goes, there 'has been none, except that F. E. Thompson claims the property as his, and J. F. Thompson claims to have sold the same; that, in their hurry to make transfers of all the property owned by said J. F. Thompson, a one-seventh interest in lot No. 20 in Davis was overlooked, and said J. F. Thompson is the owner thereof, as shown by deed from S. Maude Thompson to said J. F. Thompson and others; that the plaintiff caused his said judgment to be promptly docketed in said county, and the same is a lien upon the one-seventh undivided interest in said lot No. 20; that the rents and profits of the interest of said J. F. Thompson in lot No. 20 would not satisfy plaintiff's judgment in five years; that there are no other liens by judgment or otherwise against said lot No. 20, and no reference would be necessary to ascertain the liens and priorities; that no part of said judgment has even been paid; and he prayed that the interest of John F. Thompson in said lot might be sold to satisfy said lien, and in case it did not sell for enough to satisfy said judgment and costs that then the deed from John F. Thompson and wife to Frank E. Thompson be annulled, set aside, and canceled as fraudulent as to the one-half interest of said J. F. Thompson therein, and that the pretended sale and transfer of his personal prop-

erty to Frank E. Thompson be set aside as fraudulent, the interest of J. F. Thompson in said lot sold, and F. E. Thompson required to account for the value of said personal property, or a sufficient amount to satify the plaintiff's demands and costs. The defendant, J. F. Thompson, answered the plaintiff's bill, suggesting that he should amend it and make the Davis Hardware & Furnitnre Company, a corporation, an additional party, for the reason that, at the time the lot mentioned in plaintiff's bill as No. 20 in Davis was purchased by respondent and six others, it was the purpose and intention of said parties to form said corporation for the purpose of carring on a merchantile business, and respondent and six others were the promoters of said corporation, and said lot was purchased by them for said corporation before the charter was granted; that it was paid for by the promoters, but as soon as said charter was granted the same was by verbal contract turned over to said corporation, and said promoters were paid for their outlay in purchasing it; that said corporation took possession of said lot and improved it by the erection of valuable buildings thereon, and from that time, long before the recovery of plaintiff's judgment, said property has been in possession of said corporation, and respondent has no interest therein; that the conveyance to respondent and six others was nothing but a trust for said corporation; that the possession and notorious claim of title by said corporation to the property was notice to said plaintiff, and no decree can be entered in this case affecting said property until said corporation is made a party. At February rules, 1894, the plaintiff filed an amended bill making said corporation a party, and repeated his allegation as to his being a creditor of said John F. Thompson, and his right to have his interest in said land subjected to sale to satisfy his judgment; and alleged that, while it might be true that said real estate was purchased for and intended to be used by said corporation, it was never the intention that said real estate was to be conveyed to said corporation, but was intended to be held by the grantees; that while the agreement to form said corporation was made March 21, 1892, and recorded the 24th of March, the certificate was issued on April 2, and recorded May 11, 1892, and the deed to J.

F. Thompson and others was acknowledged on the same day and was not delivered for more than forty days thereafter, and was not recorded until June 22d, and said J. F. Thompson has never conveyed his interest in said land to said corporation, and he has the right to have the same sold to satisfy his judgment. Said corporation filed its answer denying that J. F. Thompson had any interest in said lot No 20, and adopted the answer of J. F. Thompson thereto; and J. E. Thompson in his answer to said amended bill claimed that he made a *bòna fide* sale to Frank E. Thompson for the purpose of paying his debts, and offered plaintiff his *pro rata* share, which he declined to receive; denied any interest in said lot, and claimed that he was only a trustee for said company. Frank E. Thompson also answered, denying the allegations of the bill as to himself, and denying that J. F. Thompson remained in possession of the property after the sale to him. These answers were replied to generally, depositions were taken on behalf of the defen dant J. F. Thompson, and on March 14, 1895, the cause was heard, and the bill dismissed. The plaintiff obtained this appeal.

The only error assigned is as to the action of the court in dissmissing the bill, which assignment is comprehensive and involves an examination of the entire case. Let us inquire first as to the right asserted by the plaintiff to subject the undivided one-seventh of lot No. 20 in the town of Davis to sale to satisfy his judgment. It appears from the testimony that the defendant, J. F. Thompson, and six others, promoters of a contemplated corporation chartered under the name of the Davis Hardware & Furniture Company, shortly before the same was chartered purchased said lot No. 20 for the use of said corporation, and a place on which it might erect such buildings as were needed in the transaction of its business, and they received the title merely as trustees for said corporation, and that some time before the plaintiff's suit was brought or his judgment obtained the parties thus having acquired the title and holding said lot by verbal contract turned the possession of said lot over to said corporation, and sold the same to it. This corporation at once paid for the lot and erected improvements upon it, and has been in open notorious,

and exclusiue possession of it ever since. Although the contract was verbal, it was fully performed on the part of the corporation, and it had the right to call for a deed, the defendant and those who jointly hold the title being merely trustees. Now, as between the appellant and the Davis Hardware & Furniture Company, the law appears to be clearly and definitely settled in the case of *Snyder* v. *Martin*, 17 W. Va. 276 (Syl. point 6), where the Court held that: "A purchaser of land by parol contract which has been so far executed as to vest in him the right to compel his vendor to execute the parol contract in a court of equity has an equitable right in said land so purchased which a court of equity will fully protect against the lien of a subsequent judgment creditor of his vendor." The same is held in the case of *Peck* v. *Hansbarger, Id.*, 313. Syl. Now, as to what is required to entitle a party to specific performance this Court held in the case of *Vickers* v. *Sisson's Adm'r*, 10 W. Va. 12, that "where a plaintiff files his bill for the specific performance of a verbal contract for the purchase of land, setting forth specifically the contract, the amount of the purchase money, and that the same had been paid to the vendor, that the plaintiff was in possession of said land at the time of the purchase, and had made valuable improvements thereon upon the faith of said contract, these allegations, if sustained by satisfactory proof, will entitle the purchaser to a specific performance of the contract in a court of equity, notwithstanding the statute of frauds." These rulings, applied to the facts disclosed by the record in this case, lead me to conclude that the plaintiff had no right to have said lot No. 20 subjected to sale in satisfaction of his judgment.

Let us now consider the other transaction, which the bill charges to be fraudulent in this: That the transfer of the property in the bill mentioned and described as a valuable shingle and board mill worth about one thousand five hundred dollars, situated in the town of Bretz, in said county, another mill worth about one thousand dollars in the town of Davis, and other valuable personal property therein described worth about two thousand dollars, also a house in the town of Davis on lot No. 305, held jointly by said J. F. Thompson and his wife, was made with intent

to hinder, delay, and defraud the creditors of the defendant, J. F. Thompson, and especially to hinder, delay, and defraud the plaintiff. In determining a question of this character we must look to the facts and circumstances immediately surrounding the transaction, and in doing so we find the plaintiff's action before the justice was instituted on the 10th of December, 1892, the summons was made returnable to the 17th, and appears to have been served upon the defendant, J. F. Thompson, who appeared, and the case was continued until the 27th by consent. On December 15, 1892, J. F. Thompson and wife conveyed to his nephew Frank E. Thompson in consideration of six hundred dollars by their deed of that date, lot No. 405 in the town of Davis, on which was J. F. Thompson's dwelling house, which deed was put on record on the 17th of December, the day said case was continued. Now, it must be regarded as somewhat singular that after the plaintiff's suit was brought before the justice, and on the very day to which the process was returnable, the defendant, J. F. Thompson, should be seized with a sudden inclination to dispose of all his property, real and personal, even the roof over his head, with a veiw of paying off all his debts ; and he alleges in his answer that he offered to pay the plaintiff his *pro rata* share, but the plaintiff declined to receive it. This answer was replied to generally, and the allegation is unsustained by proof. As to the payment of a valuable consideration by the grantee where the deed is attacked by a creditor as voluntary and fraudulent, several decisions of this Court have announced the doctrine as follows : "Where the creditor of a grantor assails in a chancery suit a deed made by a grantor as voluntary and fraudulent, the recitals of the deed that the grantee had paid the grantor a valuable consideration are not evidence against a creditor of such payment, and the burden of proving that a valuable consideration was paid by the grantee to the grantor is upon the grantee, but the burden of proving that the deed was fraudulent in fact is upon the creditor." See *Rogers* v. *Verlander*, 30 W. Va. 619, (5 S. E. 847); *Cohn* v. *Ward*, 32 W. Va. 34, (9 S. E. 41); *Childs* v. *Hurd*, 32 W. Va. 100, (9 S. E. 362); *Himan* v. *Thorn*, 32 W. Va. 507, (9 S. E. 930). It has also been held in this State that where a creditor

files a bill to set aside as fraudulent a deed executed by his debtor which recites the payment of a valuable considera- tion, and such creditor's debts are older than the deed, the burden is on the grantee to prove the payment of the purchase money, or, if the deed was executed for the pay- ment of existing debts, to prove the validity of such debts. See *Knight* v. *Capito,* 23 W. Va. 639.   Now, the defendant, F. E. Thompson, in his answer alleges that the purchases were made by him in good faith for a full and complete consideration, and without fraud or fraudulent intent. The general replication, however, puts this in issue, and there is no proof to sustain it; and besides, as we have seen, the burden of proof in the circumstances of this case as to the payment of the purchase money is on the gran- tee; yet neither he nor his uncle takes the stand as wit- nesses to support the allegation. It is alleged in the bill, and not denied by the answers, that on the 15th of December, 1892, J. F. Thompson sold the whole of his property to his nephew Frank E. Thompson. The defendant, J. F. Thomp- son, in his answer admits that he sold all his property, real and personal, but says affirmatively, by way of excuse, that he was indebted to certain creditors in the North, and, being anxious to pay them, he sold his interest in said lot and personal property to F. E. Thompson, a man of large means then extensively engaged in the lumber busi- ness, for a full consideration; but, so far as the proof goes, there is nothing to show that J. F. Thompson owed a dollar except to plaintiff; neither is there a particle of evidence to show that said F. E. Thompson was worth a cent or that he ever paid any consideration for the proper- ty.   In the case of *Goshorn's Ex'r* v. *Snodgrass,* 17 W. Va. 717, it was held that "if the facts established afford a suf- ficient and reasonable ground for drawing the inference of fraud, the conclusion to which the proof tends must, in the absence of explanation or contradiction, be adopted;" also that "though the proof of fraud rests on the party who alleges it, circumstances may exist to shift the burden of proof from the party impeaching the transaction onto the party upholding it."   Speaking of relationship, Bump on Fraudulent Conveyances (section 67) says : "Relations- ship is not a badge of fraud.   Fraud, however, is general-

ly accompanied with s secret trust, and hence the debtor must usually select a person in whom he can ropose a secret confidence. The sentiments of affection commonly generate this confidence, and often prompt relatives to provide for each other at the expense of just creditors. Consequently relatives are the persons with whom a secret trust is likely to exist. The same principle applies to all persons with whom the debtor has confidential relations. Any relation which gives rise to confidence, though not a badge of fraud, strengthens the presumption that may arise from other circumstances, and serves to elucidate, explain, or gives color to the transaction." And, in enumerating the relations to which the doctrine applies, uncle and nephew are mentioned, and he adds: "Whenever this confidential relation is shown to exist, the parties are held to a fuller and stricter proof of the consideration and of the fairness of the transaction." The same author (section 50) says: "The expectation or pendency of a suit is a badge of fraud, because a transfer tends to deprive the creditor of the means of enforcing his judgment when he obtains it. If an attorney who holds a claim for collection is induced to delay the institution of a suit at the request of the debtor, who thereupon takes advantage of the delay to make a conveyance, this is a badge of fraud the same as if the suit were actually pending. The pendency of a suit, however, is merely a badge of fraud." In the case under consideration the suit was pending, and on the 17th of December was continued by consent, and on that day the deed was recorded. As we have seen, the pendency of the suit at the time of the conveyance was a badge of fraud. Bump on Fraud. Conv. s. 66, says: "The grantee need not prove the payment of the consideration until the fraudulent intent of the grantor is shown, but when that is shown it is incumbent on him to establish the payment by comptent evidence, for the proof is almost exclusively within his knowledge and power. * * * The facility which a fictitious payment may be fabricated renders it necessary for him to produce all the proof which may reasonably be supposed to be in his power of the reality and fairness of the transaction, and the want of clear proof is evidence of fraud." As to notice of fraudulent intent on the part of the grantee

the same author says in section 184, p. 212: "If the grantor and grantee are relations or are intimate, this is a fact from which it may be inferred that the latter knows the former's financial condition,—citing *Castro* v. *Illies*, 22 Tex. 480. In the case of *Herzog* v. *Weller*, 24 W. Va. 199, it appears that an insolvent husband tranferred to his wife's brother for an alleged valuable consideration all of his personal property. Soon afterwards the brother transferred the said property to another brother, and the latter transferred it to his sister, the wife of said insolvent husband, as a gift in consideration of fraternal affection, In a controversy between the wife and the husband's creditors to have said property subjected to the payment of debts contracted by the husband before the transfer by him, the court held that "the burden of proving the transfer by the husband to the brother was *bona fide* and for a valuable consideration rests upon the wife." The circumstances immediately surrounding this transaction—the pendency of the suit, the relationship of the grantee, the transfer of the entire property, real and personal, including the home of the grantor, when a judgment is about to be taken against him—are indications of a fraudulent intent. The near relationship or business relations of the grantee with the grantor are such as to cast the burden of proving the payment of consideration and the *bona fides* of the transaction upon said J. F. Thompson and his nephew Frank E. Thompson, and yet neither of them came forward as a witness to sustain the transaction or show that a valuable consideration was paid. These circumstances, in my opinion, stamp the sale of said house and lot No. 305 and personal property as fraudulent, and induce me to hold that the conveyance and transfer of them were made with intent to hinder, delay, and defraud the plaintiff in the collection of his debt, and that they are therefore void as to the plaintiff's judgment. The decree of the circuit court dismissing the plaintiff's bill is therefore reversed, and the cause remanded.

                                        *Reversed.*