# CHARLESTON.

HARVEY et als v. NUTTER et als.

Submitted January 19, 1909.   Decided November 16, 1909.

1. CONTRACTS—*Fraud—Sufficiency of Evidence.*
   A fraudulent agreement may be inferred from facts and circumstances.   (p. 212).

2. FRAUDS—*Sufficiency of Evidence.*
   When such facts are admitted to be true, or are clearly proven, and are inconsistent with fair dealing, they will generally outweigh the unsupported testimony of the persons charged with the fraud.   (p. 213).

3. DESCENT AND DISTRIBUTION—*Debts of Intestate—Judicial Sale—Setting Aside for Fraud—Liens.*
   When a judicial sale of lands, descended to heirs, is made to satisfy a lien on it against the ancestor, and is purchased by the owner of the lien, and such sale is afterwards set aside as to some of the heirs, on the ground of fraud participated in by such purchaser and the co-heirs, the lien is not thereby extinguished, and such proportion of the lien as should have been borne by the share in the land so lost is still a charge upon it in favor of the purchaser.   (p. 216).

4. VENDOR AND PURCHASER—*Bona Fide Purchaser—Burden of Proof—Payment of Value.*
   When one claims to hold title, as an innocent purchaser for value without notice, from a fraudulent grantor, the burden is on him to prove payment of a fair and reasonable consideration.   (p. 215).

Appeal from Circuit Court, Barbour County.

Bill by S. B. Harvey and others against Elam B. Nutter and James Irwin and others.   Decree for complainants, and James Irwin and another appeal.

*Affirmed in part.   Reversed in part.*

*John Bassel, Fred O. Blue,* and *Arthur S. Dayton,* for appellants.

*Samuel V. Woods,* for appellees.

WILLIAMS, JUDGE:

The purpose of this appeal is to have reviewed and reversed a decree made by the circuit court of Barbour county on the

8th day of May, 1907, setting aside a judicial sale of 140 acres of land formerly owned by George E. Nutter, deceased, and sold in the suit of *J. N. B. Crim* v. *Elam B. Nutter* and others to satisfy the lien of a judgment in favor of said J. N. B. Crim, and also setting aside the deed made by the special commissioner and subsequent deeds made by the purchaser at said judicial sale and by his vendees.

Crim's judgment was against Geo. E. Nutter at the time of his death and was a lien on the said 140 acres of land. In 1898 Crim brought a suit against the administrator and heirs at law of Geo. E. Nutter to enforce the lien of his judgment. The heirs consisted of two sons, Elam B. Nutter and S. C. Nutter, and a number of other persons by the name of Harvey and Lohr who were children, and grandchildren, of a deceased daughter who had died before her father.

On the 23rd of May, 1899, a decree was entered in said suit directing a sale of the 140 acres of land to satisfy said Crim judgment. This was the only lien on the land, and then amounted to $1,964.01. Sale was made on the 6th of November, 1899, at public auction to James Irwin at the price of $2,000.00, and confirmed on the 8th day of November, 1899. The only cash paid by him to the commissioner was $63.13, to cover cost of sale and costs of executing deed, the decree reciting that Irwin had become the owner of the Crim judgment.

On the 15th of November, 1899, M. Peck, commissioner, conveyed the land to Irwin. On the 6th of January, 1900, said Irwin and wife conveyed to the two sons of Geo. E. Nutter, deceased, to-wit, S. C. Nutter and E. B. Nutter, the surface of said 140 acres of land, the deed reciting a consideration of two negotiable notes for $195.00 and $185.00 respectively, executed by the said grantees to C. R. Davis for W. A. Baubie, trustee, and by them endorsed to said Irwin. The deed further describes the notes as bearing date on the 8th day of August, 1899, and due in eighteen months after date. A vendor's lien was retained to secure their payment.

On the 23rd day of March, 1900, S. C. Nutter and wife granted their undivided interest in the surface to Hoffman Trimble and W. L. Morrison, the deed reciting the consideration as $300.00 in cash and the assumption by the grantees of the payment of the $195.00 note called the "purchase money note

against said S. C. Nutter dated August 8, 1899," which was to be paid to the holder of said note and the assumption also of $22.18, a judgment against said S. C. Nutter. On the 20th of April, 1900, E. B. Nutter and his wife granted to said Trimble and Morrison the other undivided interest in said surface, the deed reciting a consideration of $800.00 cash in hand paid. The two deeds last above mentioned were duly recorded on March 24th and April 20th, 1900, respectively.

On the 31st of May, 1900, James Irwin and wife granted to the "The Southern Coal & Transportation Company, a corporation," all the coal underlying the aforesaid tract of land. The metes and bounds of the tract were carefully set out and the quantity of coal recited as 140 acres.

The Harveys brought this suit attacking the judicial sale to Irwin, and all subsequent deeds above mentioned, as having been made and procured to be made in consummation of a fraudulent agreement alleged to have been entered into between J. N. B. Crim, James Irwin and the Nutters to prevent competitive bidding on said land and, thereby, defeat the rights of the said Harveys, who were the joint tenants of the said Nutters, they owning one undivided third interest in said land and the two Nutters owning each one undivided third. The amended bill avers also that said Morrison and Trimble each had knowledge of the alleged fraudulent agreement.

Irwin and the Southern Coal & Transportation Company, and Morrison and Trimble answered the bill and amended bill denying the allegations of fraud. Morrison and Trimble also denied knowledge of fraud, if any. The bill was taken for confessed as to the two Nutters and J. N. B. Crim and also as to Crim's executors, he having died before the hearing of the cause which was revived against his executors. Depositions were taken, and the cause was finally heard on the 8th of May, 1907, when the decree complained of was made.

This decree pronounced the sale by Peck, commissioner, to be void as to these plaintiffs and set aside the decree confirming the sale in so far as it affected their rights, and also set aside the deeds subsequently made, conveying title to said land, to the coal, and to the surface thereof, in so far as it affected the rights of plaintiffs, and decreed that they were entitled to the one undivided third in said land and coal, and appointed com-

missioners to lay off and assign to plaintiffs one-third of the coal and one-third of the surface of the 140 acres of land.

James Irwin and the Southern Coal & Transportation Company obtained an appeal from this decree. Trimble and Morrison, by their counsel, have filed a brief setting up a cross assignment of errors.

The first question to be determined is, are the allegations of fraud in plaintiffs' bill sustained by the evidence? So far as the two Nutters and the estate of J. N. B. Crim are concerned no evidence is required, because the bill is taken for confessed as to them. But the relief sought is a restoration to their rights in the land, and before it can be granted it is necessary to establish the fraud against Irwin and the Southern Coal & Transportation Company. Irwin was acting simply as the agent of this Company, hence it is affected with knowledge of any fraudulent arrangement that may have been made by him affecting the title to the land. No witness testifies to any agreement made to prevent bidding at the judicial sale, and thereby to enable Irwin to get the land at less than its worth; neither does anything appear in the records in the suit of *Crim* v. *Nutter and others* which would excite suspicion of the alleged fraudulent arrangement between the Nutters, Irwin and Crim. The two Nutters, Crim and Baubie, agent of Irwin, all testified denying the fraud. There are, however, undisputed facts appearing in the case which outweigh this oral testimony. They are these, viz: Irwin bought the land at the judicial sale for the sum of $2,000.00. This was about the amount of the Crim judgment which Irwin had paid, and which had been assigned to him by Crim before the day of sale. Irwin had previously, on the 21st day of July, 1899, by written agreement bought from the two Nutters all the coal under the tract of land in consideration that he should pay off the liens against it. This agreement does not disclose that plaintiffs had any interest in the land; nor is it shown in any manner that Irwin then knew of their interest. The Nutters bound themselves to convey the coal when the liens should be paid.

On the 8th of August, 1899, another agreement was made between the same parties whereby the Nutters sold to Irwin the same coal at $20,00 per acre. This contract authorized Irwin to apply a part of the purchase money to the payment of the Crim

judgment. It also recited a cash payment of $760.00 made by Irwin as follows, viz: an individual judgment of Crim against E. B. Nutter of $370.00, as of August 7, 1899, and a note in favor of said Crim executed by S. C. Nutter for $390.00, dated August 8, 1899. It furthermore recited that in consideration of the payment by Irwin of the Crim judgment of $1,964.01, with interest from May, 1899, E. B. Nutter had executed his note to Irwin for $185.00, and that S. C Nutter had executed his note to him for $195.00, both dated August 8, 1899, and payable eighteen months after date The Nutters bound themselves to secure the payment of these notes by deeds of trust to be given by them upon the "surface of said land." These notes are evidently the same notes recited as the consideration for the deed from Irwin and wife to the Nutters conveying to them the surface. This agreement discloses also that the two Nutters were the owners of only two undivided thirds of the land and it binds them to assist "so far as they legally can" in perfecting the title of the said Irwin to the other one-third. No reference is made in this second agreement to the agreement of July 21, 1899. In both agreements there is a reservation by the Nutters of two acres of coal for family use. These agreements were acknowledged and recorded on the 7th of August, 1899, and the 25th of August, 1899, respectively.

Irwin paid the Crim judgment before the judicial sale and took an assignment of it, and on the 6th of November, 1899, bought the land, coal and all, at the judicial sale at the price of $2,000.00, his bid being the only one made. Neither of the above agreements seems to have been carried out in the manner contemplated. But, taken in connection with subsequent facts, they clearly establish a fraudulent arrangement entered into by Irwin through his agent Baubie and the two Nutters to defeat the rights of plaintiffs in the land. Irwin wanted only the coal and mining rights, and the two Nutters wanted the surface. Irwin by these agreements, had fortified himself against competitive bidders who might have wanted the coal, for he thereby became the equitable owner of the two-thirds of it. This, of course, was not fraudulent; but the fraud appears from later circumstances. Irwin had previously paid two other debts, both in favor of J. N. B. Crim, one a judgment against E. B. Nutter and the other a note against S. C. Nutter, the two ag-

gregating $760.00. He had thus, before the day of judicial sale, paid $2,760.00 for the coal, without the surface, and had his title to two undivided thirds of it secured. How was his title to the other third to be secured? Only by a judicial sale, as some of those interested in the other third were infants; and Nutters were bound to him by agreement to assist in perfecting the title to the whole of the coal. Crim, no doubt, gave Irwin to understand that if the two small debts owing him by the two Nutters were not paid, as well as the larger judgment for which the land was decreed to be sold, he would bid on the land at the sale and make it bring enough to satisfy all these debts; otherwise, why should Irwin agree to pay the Nutter note which was not a lien on the interest of anyone in the land? The proof shows that the land was worth twice what it brought at the sale.

Shortly after Irwin got his deed for the 140 acres of land from the commissioner, he made a deed to the two Nutters for the surface. They testify that they paid nothing for it. Why this unusual generosity on the part of Mr. Irwin? The only rational explanation is that it was done in pursuance of the previous fraudulent arrangement between him, made by Baubie, his agent, and the two Nutters. By this plan the two Nutters not only became the gratuitous owners of the surface, to the exclusion of plaintiffs, but in addition thereto they secured individual debts to be paid which they owed to Crim to the amount of $760.00; or, if the two notes executed by them to Irwin and recited as consideration in the deed which he made to them are to be deducted, then the additional profit to them would be $380.00. These circumstances are clearly sufficient to outweigh the oral testimony of the interested parties and their agents in the transaction, who are the only witnesses; and are sufficient to establish the charge of fraud against the two Nutters, Irwin and the Southern Coal & Transportation Company, whose agent Irwin was. Smith on Frauds, sec. 266; Bump on Frauds, 579; *Sturm* v. *Chalfant,* 38 W. Va. 248 (18 S. E. 451); *Bronson* v. *Vaughn,* 44 W. Va. 406 (29 S. E. 1022); *Crislip* v. *Cain,* 19 W. Va. 438; *Goshorn's Ex'r.* v. *Snodgrass,* 17 W. Va. 717.

The coal at the price of $20.00 an acre would have brought $2,800.00. This was the price Irwin had agreed to pay the Nutters for it before the judicial sale, and was $800.00 more than enough to pay the only lien against the joint interest of plain-

tiffs and the two Nutters in the land, and $800.00 more than the entire land, including the coal, sold for at the judicial sale. By the payment of this judgment and the payment also of the individual debts which the two Nutters owed to Crim, Irwin paid about the amount that he had agreed to pay for the coal. But $760.00 of this amount was the individual debts of the Nutters for which the plaintiffs were in no wise bound. This was paid by Irwin notwithstanding his knowledge at the time of the interest of plaintiffs. It is thus shown that by the consummation of this fraudulent scheme plaintiffs have been deprived of their rights in the land, and that the two Nutters have acquired title to the entire surface for no other consideration than their original two-thirds undivided interest therein, and, in addition thereto, have gotten all the benefit of the surplus value of the coal over and above the amount necessary to discharge the only lien against the land.

But what relation do Morrison and Trimble sustain to this fraudulent transaction? They bought the surface from the two Nutters and received conveyances by separate deed. The amended bill alleges that they bought with knowledge of the fraudulent arrangement between their grantors and Irwin. They answered denying any knowledge of the fraud, and averred that they were *bona fide* purchasers for value. There is no proof that they had any knowledge of the fraud. The fraud is a latent one. The Harveys who are plaintiffs in the present suit were parties to the Crim suit to enforce the judgment lien; apparently, all the heirs of Geo. E. Nutter, deceased, were then before the court; and, so far as the records of that suit discloses, the sale and deed by the commissioner to Irwin are entirely regular; and, if it had not been for the fraud which the proof outside of the record establishes, Irwin himself would have acquired good title to the interest of these plaintiffs. Nothing appearing of record to awaken suspicion of any fraud or unfairness in the judicial sale, and Irwin appearing of record to be the owner of the title to the whole of the land, he could confer good title upon an innocent purchaser for value; and so also could the Nutters who had acquired title from him confer good title on their grantees, if innocent purchasers for value, notwithstanding the Nutters had acquired their title in pursuance of a secret fraud. Morrison and Trimble had no knowledge, either actual or constructive, of

the fraud practiced upon these plaintiffs, so far as the record of the case discloses; and, if they have proven themselves to be purchasers for value, they should be protected. But have they proven that they paid value? The burden is on them to do so; *Knight* v. *Capito,* 23 W. Va. 639; *Butler* v. *Thompson,* 45 W. Va. 660; *Knight* v. *Nuse,* 53 W. Va. 50; *Colston* v. *Miller,* 55 W. Va. 490; have they discharged it? We think not. The deeds to them from the Nutters recite sufficient consideration paid, but this is not proof of payment as to third parties. The only proof as to consideration paid is the testimony of the two Nutters, whose testimony, although not taken to be read on behalf of Morrison and Trimble, might still be read as proof in their behalf, if it was sufficiently clear. S. C. Nutter was asked this question and answered as follows: "Q. What did they pay for said surface of said land? A. They paid about $517.00, somewhere near that, that was for my half of said surface of land."

E. B. Nutter's testimony is as follows: "Q. What did said Trimble and Morrison pay you for your half interest in the surface of said land? A. $800.00." This evidence is not sufficiently clear to prove actual payment of the money; it may properly be interpreted to mean that these were the sums they had agreed to pay. It is not sufficient to discharge the burden of proving actual payment.

The deed from Irwin to the Nutters for the surface also grants to them two acres of the coal underlying the same; and this two acres of coal is conveyed to Morrison and Trimble by the Nutters. But they acquired no better title to it, as against the plaintiffs, than they did to the surface, and it should be included in the amount of coal to be partitioned off to the plaintiffs.

It is contended by counsel for appellants that a different case of fraud, if any, is established by the proof than that alleged in the bill. We do not think there is any substantial variance between the case alleged and the one proven; because the fraudulent agreement alleged in the bill is clearly inferred from the circumstances proven.

The decree complained of makes no provision for the preservation of the one-third of the J. N. B. Crim judgment as a lien upon the one-third of the coal and the surface to be parti-

tioned to plaintiffs, but seems to treat their interest as being discharged of this burden.

This judgment was a lien upon the lands descending to the heirs of Geo. E. Nutter, deceased, and the interest of each heir is bound for its proper proportion of the debt. Plaintiffs have no right to have their one-third interest in the land and. coal restored to them discharged of its share of the lien of the Crim judgment. Irwin paid Crim and took an assignment of the judgment; he now loses one-third of the land to the same persons whose interest in the land was bound for the judgment. He is entitled to be subrogated to the rights of Crim as against these plaintiffs. *Kimble* v. *Wotring,* 48 W. Va. 412. Plaintiffs, having asked equity, must do equity; they must, therefore, repay to Irwin the one-third of the Crim judgment with interest. This amount is still a lien on plaintiffs' one-third interest in the land and coal in Irwin's favor. The decree is erroneous in so far as it gives plaintiffs their interest in the land without charging it with the one-third of the Crim judgment lien, and, in this particular, it will be corrected, and as thus corrected it will be affirmed and remanded for further proceedings according to law and the rules governing courts of equity.

*Affirmed in part. Reversed in part.*