# CHARLESTON.

## RIDENOUR *et al.* v. ROACH *et als.*

### Submitted January 25, 1916.　Decided February 1, 1916.

1. FRAUDULENT CONVEYANCES—*Suit to Set Aside—Burden of Proof— Fraud—Payment.*

    In a suit to set aside a conveyance, as made with intent to defraud creditors, proof of the grantor's fraud casts the burden upon the grantee to prove actual payment of a valuable consideration. (p. 554).

2. SAME—*Proof of Fraud—Circumstantial Evidence.*

    Fraud may be proven, as well on the part of the grantee as the grantor, by circumstantial evidence, and may be legally inferred from such established facts and circumstances as will lead a reasonable man to conclude that the purpose was to defraud the grantor's creditors. (p. 555).

3. SAME—*Fraud of Creditors—Secret Reservation.*

    A secret reservation by an insolvent grantor of a material interest in the land granted, is a fraud in law as to his creditors. (p. 552).

4. APPEAL AND ERROR—*Erroneous Decree—Correction on Appeal— Fraudulent Conveyances.*

    A decree setting aside a fraudulent conveyance in so far only as it affects the rights of plaintiffs and directing a sale of the property, and application of the proceeds to payment of costs and plaintiffs' debt, but which is erroneous only in that it directs the residue of proceeds, if any, to be paid to the grantor, instead of the grantee, will be corrected on appeal, in that respect, and then affirmed, with costs to appellees. (p. 556).

Appeal from Circuit Court, Doddridge County.

Suit by O. E. Ridenour and others against O. A. Roach and others. From decree for plaintiffs, Lorraine Davis appeals.

*Modified and Affirmed.*

*C. N. Pew*, and *J. V. Blair*, for appellants.
*A. F. McCue* and *H. Roy Waugh*, for appellees.

WILLIAMS, PRESIDENT:

At the suit of O. E. Ridenour and G. B. Skidmore, partners, and creditors of O. A. Roach, the circuit court of Doddridge county set aside a conveyance of real estate made by said Roach to Lorraine Davis, on the ground that 'it was made for the purpose of hindering, delaying and defrauding said creditors in the collection of their debt, and Davis has appealed.

All the parties reside in Upshur county. The real estate conveyed is the oil and gas underlying a tract of 87 acres of land in Doddridge county, with the privilege of mining and removing the same. It was all the real estate said Roach owned and was then leased for oil and gas to the Hope Natural Gas Company. Plaintiffs had recovered a judgment against Roach in a justice's court in Upshur county, on 18th of November, 1913, for $253.28, and execution thereon had been returned "no property found." An abstract of the judgment was docketed in the county court clerk's office of Doddridge county on February 6, 1914; and the deed from Roach and wife to Davis bore date 2nd of February, 1914, was acknowledged on the 3rd, and recorded in the county court clerk's office of Doddridge county on February 4, 1914, two days before the docketing of the judgment. It recites a consideration of $100.00 in cash.

The bill avers that Roach was insolvent when he made the conveyance; that he made it for the sole purpose of hindering, delaying and defrauding plaintiffs in the collection of their judgment; and that the grantee Davis had knowledge of such fraudulent intent. These averments are denied in the answers of Roach and Davis, the latter averring that he is a bona fide purchaser and had no knowledge of Roach's indebtedness to plaintiffs.

There is no direct and positive proof of the fraud alleged, which is true of most cases of this character, and the decision depends upon whether or not certain suspicious facts and circumstances, proven to exist, are sufficient to justify the reasonable inference of a fraudulent purpose on the part of

Davis to assist Roach in putting his property out of the reach of his creditors. It is proven that Roach was insolvent, that the property conveyed to Davis was all the property he then owned, and that his intent was to defeat plaintiffs in the collection of their debt. The proof of Davis's knowledge of such fraudulent intent is not quite so clearly proven, but depends upon deductions to be made from suspicious facts and circumstances, not explained by his testimony. They are as follows, viz.: Davis was an unmarried man, he owned and operated a box factory in the town of Buckhannon and boarded with Mrs. Roach, wife of O. A. Roach, who conducted a boarding house. He frequently employed O. A. Roach to work for him. He had never dealt in oil property before, and bought the property in this instance without seeing it. He knew it was under lease at the time he bought, yet he knew nothing of the terms of the lease and made no inquiry regarding it before purchasing. The Hope Natural Gas Company owned the lease and was paying a delay rental of $25.00 a quarter, still he did not notify it that he had become the owner and entitled to the rentals. The deed makes no reservation to Roach of any of the rentals, yet Davis admits that Roach collected, and retained, the first quarterly rental of $25.00 falling due after the conveyance, and says it was done in accordance with their understanding at the time of the purchase, that it was a part of the consideration. This of itself proves a fraud in law. The deed mentions only the consideration of $100.00 cash. Even though a valuable consideration is paid by the purchaser to an insolvent debtor, the secret reservation of a material benefit by the grantor to himself is a fraud in law. *Sims* v. *Gaines,* 64 Ala. 392; *Page* v. *Francis,* 67 Ala. 379; *Deane* v. *Skinner,* 42 Iowa 418; *Macomber* v. *Peck,* 39 Iowa 351; *Scott* v. *Hartman,* 26 N. J. Eq. 89; and *Lukins* v. *Aird,* 6 Wall. 78. Immediately after it was acknowledged, Roach took the deed to West Union, in Doddridge county, and had it admitted to record and advanced the recordation fees. Davis and Roach both say, however, that Davis repaid him the expenses of recording the deed. Davis also handed Roach $3.00 after his return, to pay the expenses of the trip. This tends to show unusual haste to have the deed recorded. He could have mailed it to the clerk at a cost of not more than ten or

fifteen cents. Davis says his box factory was all the property he owned; that it is worth about $8,000.00; that his yearly business amounted to from $18,000.00 to $24,000.00, but that he ran it on very close margin, and was often hard pressed for money to carry it on; that shortly before the 1st of February, 1914, a number of his employees had struck because he had not paid them. Some of them brought suits against him, but the suits were later settled and he paid them. He admits he did not get the money with which to pay them until the 6th of February, two days after the conveyance and the alleged payment of the $100.00 cash. He is unable to tell where he got the money to make the cash payment. The oil lease bore date July 11th, 1905, and was for a period of ten years, and as much longer as oil or gas was produced, and provided for a delay rental of $25.00 per quarter, payable in advance, until a well was drilled or the lease was abandoned. The delay rental had been paid regularly, and at the time of the purchase the lease was yielding $100.00 a year, and had fifteen months yet to run, before the term expired even if no drilling was done. The oil and gas under the land was assessed for the purpose of taxation at $200.00, and it appears there are producing gas wells on adjoining farms. Hence it is highly improbable the lessee would abandon the lease without testing the property for oil and gas. These circumstances tend to prove that the price alleged to have been paid was inadequate. Of course it could not be known, without a test, that the land contained either oil or gas; and if it contained neither, the property conveyed by the deed was worth nothing except the delay rentals which were reasonably certain for the period of fifteen months. On the other hand, if the property should be found to contain either oil or gas, it would be valuable. But, notwithstanding the uncertainty of its actual value, we think the price was inadequate.

Fraud on the part of Roach being clearly established, the burden is cast upon his vendee to prove that he paid a valuable consideration. *Butler* v. *Thompson,* 45 W. Va. 660; and *Colston* v. *Miller,* 55 W. Va. 490. The recital of the consideration in the deed is not evidence against the plaintiffs who are assailing it as fraudulent, and, notwithstanding the burden of proving the fraud is on them, the burden of proving

actual payment of a valuable consideration is on the grantee. *Rogers* v. *Verlander*, 30 W. Va. 619; and *Butler* v. *Thompson*, *supra*. Davis admits that he was not able to pay the employees in his factory until he got the money from a certain source on the 6th of February, and does not explain where he got the $100.00 cash which he claims to have paid Roach when the deed was delivered to him. His testimony, as well as that of Roach on this point is not clear and satisfactory.

The expression oft quoted from the law books, that fraud can not be presumed but must be proven, is sometimes misleading. It does not mean that fraud must be established by direct and positive proof, but means no more than that it must be established by such evidence, either direct or circumstantial, as will satisfy a reasonable mind. It may be proven by evidence which is wholly circumstantial; in fact, in the great majority of cases of fraudulent transfers of property, that is the only character of evidence available. *Knight* v. *Nease*, 53 W. Va. 50; *Moore* v. *Gainor*, 53 W. Va. 410; *Moore* v. *Tearney*, 62 W. Va. 81; and *Harvey et als.* v. *Nutter et als.*, 66 W. Va. 208. Whenever the facts and circumstances proven are such as to lead a reasonable man to the conclusion that an attempt has been made by a debtor to withdraw his property from the reach of his creditors, by conveying it to another, and such suspicious facts and circumstances are not satisfactorily explained, they are sufficient to establish fraud. "Fraud is to be legally inferred from the facts and circumstances of the case, when those facts and circumstances are of such a character as to lead a reasonable man to the conclusion that the conveyance was made with intent to hinder, delay and defraud existing or future creditors." *Sturm* v. *Chalfant*, 38 W. Va. 248. *Burt* v. *Timmons*, 29 W. Va. 441; and *Kaine* v. *Weigley*, 22 Pa. St. 179. Quoting from the opinion of Judge Black, at page 183, in the case last cited: "The frequency of fraud upon creditors, the supposed difficulty of detection, the powerful motives which tempt an insolvent man to commit it, and the plausible casuistry with which it is sometimes reconciled to the consciences even of persons whose previous lives have been without reproach; these are the considerations which prevent us from classing it among the grossly improbable violations of moral duty;

and therefore we often presume it from facts which may seem slight. Besides, when a man, who knows himself unable to pay his debts, disposes of his property for a just purpose, he can easily make and produce the clearest evidence of its fairness. If he sells for the benefit of his creditors, he can prove that he applied the proceeds to their use. It is no hardship upon an honest man to require a reasonable explanation of every suspicious circumstance, and rogues are not entitled to a veto upon the means employed for their detection.''

In view of all the foregoing facts and circumstances we think the court reached the right conclusion in holding the deed to have been made with fraudulent intent.

It appears from Exhibit No. 4, with plaintiffs' bill, that the 87 acres of land, the oil and gas under which is the subject of this litigation, was conveyed to O. A. Roach by Margaret Roach and her husband in 1885, in consideration of $800.00, and that only a part of the price was paid in cash; that the balance, evidenced by three promissory notes for $102.29 each, payable in six, twelve and eighteen months, was secured by a vendor's lien retained. The failure to make Margaret Roach, the lienor, a party to the bill, and the failure to ascertain the amount of her lien, before decreeing a sale of the oil and gas, is assigned as error. This assignment is not well taken, for the reason that it appears from the record that Margaret Roach's lien was discharged. This is shown by Exhibit No. 5, with plaintiffs' bill, which is a deed from O. A. Roach and wife, conveying back to Margaret Roach the same 87 acres of land, excepting and reserving the coal, oil and gas underlying the same. That deed, made in 1903, recites the pendency of a suit in chancery, brought by Margaret Roach to subject the 87 acres of land to sale, to satisfy the aforesaid notes, and that the consideration for said conveyance was $618.00 in cash, and ''a full and complete compromise of all matters in difference between the parties.'' It is, therefore, not necessary to determine the question of law, whether or not it is reversible error, in a suit attacking a conveyance as made to hinder, delay and defraud creditors, to decree a sale of the land, without making prior lienors parties. The sale in this case is not made subject to prior liens.

The decree directs the remainder of the proceeds of sale, if any, after payment of costs and plaintiffs' debt, to be paid to O. A. Roach. This is error, but not such as calls for reversal. The remainder, if any, should be paid to the grantee Davis. The deed, as between the parties to it, is good, and the decree properly sets it aside, only so far as it affects the rights of plaintiffs. The decree will be modified in this respect, and, as thus modified, it will be affirmed, with costs to appellees.

*Modified and Affirmed.*